29192. C. V. HILL & COMPANY INC. *v.* WEINBERG.

DECIDED MARCH 20, 1942.

*Philip Etheridge, Clifford R. Wheeless,* for plaintiff in error.
*Hooper, Hooper & Miller,* contra.

BROYLES, C. J. The petition brought by Sam H. Weinberg against C. V. Hill & Company Inc. substantially averred that the defendant sold the plaintiff "a ten-foot refrigerator display case to be used by plaintiff at his meat market" in Atlanta, Georgia; that the purchase-price of said display case was $1002.72, and that as part payment for said display case plaintiff delivered to defendant another display case valued at and reasonably worth $294, and paid defendant $78.28 in cash, making a total payment of $372.28; that said display case was purchased for the purpose of refrigerating and keeping in good condition meat and meat products, which said pur-

pose was known to the defendant when the sale was agreed upon; that said display case was wholly unfit for said purpose because it was "improperly insulated," and contained other defects which caused it "to fail to keep temperatures in the same at a level to prevent spoilage of meat and meat products," and was also "so improperly constructed as to allow the accumulation of excess amounts of moisture within the same thereby permitting the spoilage of meat and meat products;" that said display case was "not merchantable and not reasonably suited to the use intended and . . contained [undisclosed] latent defects in construction," and there had been "a total failure of consideration whereby plaintiff is entitled to the return of all moneys paid to the defendant." (The petition sought also to recover $45, "representing costs to plaintiff of meats spoiled . . in said case," but this item was stricken on demurrer and the action proceeded for the recovery of $372.28, the sum of the alleged cash paid the defendant and the alleged value of the display case traded in on the one purchased by the plaintiff.)

In its answer the defendant admitted the sale of said display case to the plaintiff "on the date alleged . . for the price alleged," but denied that the plaintiff paid it $78.28 in cash, and denied that the display case traded in by the plaintiff "was worth the amount allowed therefor." The answer also averred that said sale "was made as the result of a certain contract . . which contained the entire agreement between the parties," and notified the plaintiff to produce that contract at the trial of the case. And the defendant further pleaded that "if the temperatures in the display case . . were not maintained at a proper level, such failure was the result of improper refrigerating machinery and was not the fault of the display case sold . . plaintiff." After the defendant had demurred to the petition and answered as stated, the plaintiff amended his petition by pleading the breach of an express warranty whereby the defendant warranted the display case "to be free from defects in material and workmanship under normal use and service within the United States, for a period of one year from the date of delivery of the fixture to the original retail purchaser, our obligation hereunder being limited to replacing without cost to such original purchaser within such period, any part or portion thereof, of our manufacture, which upon examination we judge to be thus defective." The plaintiff further substantially amended his petition by

averring that immediately upon discovering the alleged defects in said display case he called the same to defendant's attention and "did then and there and many times thereafter demand of defendant that it replace the said defective display case or take the same back and pay . . plaintiff . . the moneys paid by him to defendant;" that "defendant did, from time to time, refuse to repair or replace said display case and also refused to take the same back;" that said display case being worthless and of no value to plaintiff, he moved it to a storage warehouse, "notifying the defendant that . . said case was stored for its account;" that while said case was so stored the C. I. T. Corporation, which had bought the notes and the retention-title contract for said case from defendant, foreclosed its retention-title contract and sold the display case at public outcry before the court house of Fulton County, Georgia; that plaintiff had promptly offered to restore said case to the defendant and defendant had refused to accept it; that after it had been seized by legal process, as stated, it became impossible for plaintiff to restore it to defendant; and that while said case was in the possession of plaintiff he "derived no benefit from the same, it having been not only worthless to plaintiff but causing him damage as herein set forth."

After the petition had been amended as stated it was demurred to and again amended by adding thereto paragraph 4(b), which substantially alleged that said display case was manufactured by the defendant and sold to plaintiff on or about February 28, 1940, and delivered to him on or about March 5, 1940; that when the case was delivered to plaintiff the weather was cold and it "apparently operated in a satisfactory manner;" that when the warm weather set in about April 15, 1940, plaintiff discovered the defects in said display case and called the same to the attention of the defendant; that "plaintiff called the . . defects and unsatisfactory performance of said display case to the attention of [Moritz] Flatauer [defendant's agent] on six or eight occasions, that is once or twice a week after April 15, 1940, and that said Flatauer did from time to time send workmen . . to work on the said display case in an effort to put it in satisfactory condition; that on each occasion plaintiff asked the defendant to take the display case back because of its unsatisfactory condition, but that defendant protested that the same could be placed back in satisfac-

tory condition for normal usage, and for this reason the plaintiff did retain the same until he finally saw that the same could not be repaired; that . . said case was never put in satisfactory condition by the defendant and, on August 6, 1940, plaintiff" stored it as hereinbefore set out and notified the defendant that it "was stored there for its account;" that "the foreclosure proceedings instituted by the C. I. T. Corporation were filed in the civil court of Fulton County . . on August 22, 1940;" and that "plaintiff continued to use the said display case up to the time he removed the same from his place of business because he was promised by said Flatauer from time to time that the same would be put in satisfactory condition."

In part, the plaintiff testified in substance that, because of its defective construction, the display case sold to him by the defendant caused considerable portions of the meat and meat products placed therein by him to spoil, and the display case was "totally worthless." The defendant, on the other hand, adduced evidence to the effect that, without any change in its condition, the same display case was used by another person a short time after it had been discarded by the plaintiff and was entirely satisfactory. There was also evidence that said display case was refrigerated by a separate machine which the defendant did not sell the plaintiff, and the evidence was in sharp conflict as to whether this machine was adequate to refrigerate the display case. There was evidence that it was old and not suited to refrigerate the display case, and other evidence that, though it was a second-hand machine, it was in good shape and capable of refrigerating the display case properly. For instance, Mr. T. V. McHuen, "a commercial refrigerator mechanic," testified that he examined the compressor, or refrigerator machine, on July 3, 1940, and "found the compressor, that is the machinery that refrigerates this unit, to be in good shape." There was also evidence that the display case in question worked fairly well during the cool weather when it was first delivered to the plaintiff, but that more and more meat spoiled as the weather grew warmer, and that finally the Government meat inspector discarded large quantities of the meat and meat products as being unfit for food. There was also evidence to the effect that the plaintiff was induced to keep the case as long as he did before tendering it back to the defendant because of the repeated assurances of the defendant's agent, Flatauer, that it could and would be fixed.

In the contract of sale, the following stipulation occurs: "Our [the defendant's] obligation hereunder being limited to replacing, without cost to such original purchaser within such period [one year], any part or portion thereof of our manufacture, which upon examination we judge to be thus defective." The court charged the jury in effect that the proper construction of such a warranty would not limit it merely to a defect which the warrantor might judge to be thus defective, but that the warranty would cover any such defect that upon examination actually existed. This charge is assigned as error on the ground that it arbitrarily stated that the contract of the parties did not mean what it said, but gave it an entirely different meaning when there was nothing illegal or unlawful in that provision of the contract. We think that the court properly construed the stipulation in the contract. It is well settled in the law of contracts that the intention of the parties to a contract should prevail, and that a reasonable construction of the contract should be given. "The law will not construe a contract so as to give the debtor the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached. . . Nor will a contract be so construed as to authorize one of the parties to take advantage of his own wrong, unless it be plain and manifest that such was the intention of the parties." *Haag* v. *Rogers*, 9 *Ga. App.* 650, 653 (72 S. E. 46), and cit.

Grounds 5 and 6 complain of two excerpts from the charge of the court. While subject to some slight criticism, these excerpts, when viewed in the light of the entire charge and the facts of the case, disclose no harmful error. Special grounds 7 and 8 complain of the failure of the court to instruct the jury, without a request to do so, on the principles of law on which the suit was based, to wit, the law of the rescission of contracts as laid down in the Code, § 20-907, as follows: "In some cases a party may rescind without the consent of the opposite party, for nonperformance by him of his covenants, but this can be done only when both parties can be restored to the condition in which they were before the contract was made." The grounds further complain of the court's omission to charge, without request, "the principle of law governing the promptness with which plaintiff was required to act after having

been notified that his demand for rescission of the contract was denied by the defendant." In our opinion, the substantial issues raised by the pleadings and the evidence required that the above-stated principles of law be charged in this case, even without a request therefor. "The Supreme Court has uniformly held that the charge of the judge to the jury must give the law of the case to the extent of covering the substantial issues made by the evidence, whether such instructions are requested or not." *Southern Cotton-Oil Co.* v. *Brownlee*, 26 *Ga. App.* 782 (2) (107 S. E. 355); *Van-Valkenburg* v. *Wood*, 41 *Ga. App.* 564 (153 S. E. 924). Because of the error just pointed out, another trial of the case is required; and the general grounds of the motion are not now passed upon.

*Judgment reversed. Gardner, J., concurs.*

MacIntyre, J., dissenting. The petition alleges the execution of the contract, recites the express provision of it on which the plaintiff alleges he is suing, and says that this express written provision of the contract has been violated, and that he seeks a recovery for such violation. The provision of the contract is denominated an "express warranty." In *Commercial Credit Co.* v. *Lewis*, 59 *Ga. App.* 144 (2) (200 S. E. 566), this court approved the following: "The warranty whether express or implied, necessarily enters into the consideration of the article sold. A plea of breach of warranty is the substantial equivalent of a plea of failure of consideration; and the defense is allowed upon the principle that the consideration of a note between the parties is always open to inquiry so far as the promise to pay depends upon its existence, continuance, or amount." In *Chattanooga Beauty Supply Co.* v. *Fanin*, 61 *Ga. App.* 736, 739 (7 S. E. 2d, 302), this court quoted with approval from *Barnett* v. *Speir*, 93 *Ga.* 762 (21 S. E. 168), that "Rescission, where a right to rescind is not expressly reserved, can not be had for constructive fraud or merely on account of warranty, express or implied." Here the buyer, the injured party, must not merely offer to rescind, but must in fact rescind. He must complete the recission before the contract is void. *Heard* v. *Coggins*, 134 *Ga.* 52, 54 (67 S. E. 429). The answer of the defendant did not plead rescission, and in my opinion the whole pleading did not raise the issue of rescission, and the judge did not commit reversible error in not charging thereon. I think the plaintiff elected to bring his suit on a breach of an express warranty in the written contract, and

then set forth that the reason the warranty was breached was that there was a total failure of consideration, the article sold being of no value. Even if there was an allegation of one or several facts which would be appropriate to some other form of action, yet it would not necessarily change the present form of action which is based on a breach of an express warranty as contained in the written contract, which breach of warranty is set up by way of failure of consideration. *First Bancredit Cor.* v. *McKenzie Lumber Co.,* 65 *Ga. App.* 595, 600 (16 S. E. 2d, 191); *Baldwin* v. *Davis,* 188 *Ga.* 587, 589 (4 S. E. 2d, 458). I therefore can not concur in the judgment of reversal.