30479. HUTTO *v.* SNAP-ON TOOLS CORPORATION.

DECIDED MAY 12, 1944. REHEARING DENIED JUNE 7, 1944.

*Augustine Sams,* for plaintiff in error.
*Herbert Johnson, Clarence H. Calhoun,* contra.

PARKER, J. In an action by the plaintiff in error against the defendant in error for commissions alleged to be due him on two accounts which he contended were produced as a result of his efforts, the court directed a verdict against the plaintiff on the major account, on which he sought to recover a commission of 25 per cent., and for the plaintiff on the relatively small account, on which a commission of 15 per cent. was sought. The evidence consisted of testimony by the plaintiff and employees and former employees of the defendant, the written contract of employment between the plaintiff and the defendant, correspondence between the plaintiff and employees of the defendant, invoices, orders, inquiries and memorandums with respect to the accounts sued on, and copies of a periodic sales-promotion publication of the defendant's branch office.

The written contract of employment provides in part as follows: "1. The employer shall pay employee a commission on sales of its merchandise in said territory in accordance with the schedule at-

tached to this agreement. It is agreed that the commission schedule referred to above may be varied up or down on any specified item or items of merchandise upon written or verbal notice to the employee. It is agreed and understood by the employee that the employer reserves the right to handle any account which because of its nature is handled as a factory or branch-office account, and sales to such accounts shall not involve any commission to employee. It is further agreed that where a discount from list price is given to any account, the employer reserves the right to reduce the commission percentage or vary the commission schedule referred to above in accordance with the discount granted. Employer agrees to give written or verbal notice to the employee of any such reduction or change in the commission schedule. . . Commission schedule: All items other than those noted below, will pay a commission of 25%, on a paid sales basis. . . Changes in the commission structure, can be made by written notice, or orally. Any new tools which carry less than a 25% commission will so be announced when added to the line."

The evidence was conflicting as to whether the larger account sued on was a branch-office account, and as to whether the plaintiff contributed to the sale thereupon; but it appeared without dispute that the defendant had paid the plaintiff an amount equivalent to 5 per cent. of the gross price on the larger account, which the defendant contended was a bonus or gratuitous payment, that a 20 per cent. discount had been given on this account, and that the merchandise was listed and billed on the net figures without a showing of a discount. The larger account- represented sales made for use at a United States Army airport post near Macon, Georgia, designated Cochran Field, and the smaller account was based on sales made for use at the army depot near Conley, Georgia. There appeared to be no dispute about the agreed 15 per cent. commission for the Conley Depot account, the parties having fixed that rate before the sales. The court gave as his reason for directing the verdict, his interpretation of the third paragraph of section 1 of the employment contract, in stating to the jury: "The court holds as a matter of law that the company had the right, under this provision [notice in the contract] to reduce the agent's commission by 25%, and as he has received 5% he has been paid in full on the

Cochran Field account. The court thereupon directs a verdict against the plaintiff on the Cochran Field account."

The plaintiff made a motion for new trial on the general grounds, thereafter adding three special grounds, the first of which assigned error upon the direction of the verdict, and the other two, upon the allowance of testimony, contrary to the written contract, to the effect that the Cochran Field account was a branch-office account, the plaintiff contending that such evidence influenced the court in directing the verdict. The motion for new trial was overruled, and the plaintiff excepted.

The court's construction of the contract, as announced with his direction of the verdict, was incorrect. The words used with respect to the reduction of the commission percentages, when taken by themselves, are capable of more than one interpretation. Yet the evidence shows that in other transactions the reduction made in the commission percentages was a sharing of the amount of the discount by the employer and the salesman, and not, as contended by the defendant and construed by the trial court, a deducting of the whole of the discount from the salesman's commissions. The latter view is indeed inequitable, and should not be applied unless the facts and circumstances demand it. Upon such a theory a discount equal to the earned commissions could be given by the employer to the customer, and the salesman completely cut out without any loss to the employer. "The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided." 17 C. J. S. 739, § 319. "The law will not construe a contract so as to give the debtor the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached. . . Nor will a contract be so construed as to authorize one of the parties to take advantage of his own wrong, unless it be plain and manifest that such was the intention of the parties." *C. V. Hill & Co.* v. *Weinberg,* 67 *Ga. App.* 44 (19 S. E. 2d, 430), and cit.

How then can we escape a finding that the discount was to be shared, where the evidence of both parties indicated that in other transactions such had been done? Should we disregard that preponderance of practice, and seize upon the defendant's apparently lone instance of deducting the entire discount from the salesman's commissions with a claim that it was a branch-office account, and that a 5 per cent. commission was being paid only as a bonus or gratuity? It would seem that to do so would amount to a construction allowing the defendant to take advantage of his own wrong. If the defendant properly exercised its right under the third paragraph of section 1 of the contract, as explained by the evidence, then the discount given would have been equally shared by the employer and the salesman unless they agreed upon a different basis of apportionment.

The trial court ruled that the notice prescribed by the said paragraph of the contract did not have to be given before the giving of the discount in order that the reduction in the commissions might be binding upon the plaintiff. We think the court erred in this particular, for the notice could have served no reasonable purpose except to allow the salesman to plan his activities with respect to the pending sale. Any other intention would have been a "locking of the barn door after the horse had been stolen." Again the principle requiring the most reasonable construction compels a finding that the plaintiff's commission percentages could be reduced in accordance with the discount granted only upon notice to him. The employer could not be prevented from giving the discount or reducing the commission percentage, but it could not act so as to bind the salesman until the required notice was given and the salesman afforded an opportunity to plan his course. He might wish to further the negotiations with the prospect of earning the reduced commissions, or he might wish to abandon the transaction, in view of the reduced compensation, and leave it entirely with the purchaser and his employer. The evidence does not demand a finding that the defendant gave the required notice to the plaintiff. As stated above, in the absence of the required notice, the salesman would not be bound by the reduced rate of commission, and it follows that he would be entitled to collect commissions at the full rate.

We are unable to find an authority directly in point as to this case, but the following statement appears in the text in 3 C. J. S

98, § 192: *"Sales below list price.* Ordinarily a provision in the contract of agency that the agent's commissions shall be reduced if sales are made below the list price will be given effect, provided such reductions are not made by the principal without the knowledge or consent of the agent." In the notes to the text are cited the foreign cases of Buffington *v.* Brand Stove Co., 86 Mo. App. 160; Davis *v.* Huber Mfg. Co., 119 Iowa 56 (93 N. W. 78); and Bedilion *v.* Muehler Bros., 74 Pa. Super. 516. The Buffington case is cited in support of the first clause of the text; in it the contract did not provide for a notice. While the facts of the other two cases differ from the case at bar, the rulings therein support the second clause of the text.

The only remaining basis for sustaining the direction of the verdict would be a necessary finding that the Cochran Field transaction was a branch-office account. The evidence is conflicting on that score. The invoice contains the name of the plaintiff in the capacity of salesman, the sales-promotion publication in several instances recognizes that the plaintiff worked the army airports in his territory, and the correspondence and oral testimony raise a conflict as to whether or not the account should be credited to the plaintiff's efforts. The jury would have been authorized under the evidence to find that the account was not a branch-office account.

It follows that the court's direction of the verdict was error, and that the issues on the Cochran Field account should have been submitted to the jury. Since the case must be tried again, it is not necessary to consider the other assignments of error.

*Judgment reversed.* *Sutton, P. J., and Felton, J., concur.*