39594. ATLANTIC COAST LINE RAILROAD COMPANY et al. v. GEORGIA RAILROAD & BANKING COMPANY.

DECIDED NOVEMBER 30, 1962—REHEARING DENIED DECEMBER 18, 1962.

*Heyman, Abram, Young, Hicks & Maloof, Herman Heyman, Joseph Lefkoff, Fulcher, Fulcher, Hagler & Harper, W. M. Fulcher,* for plaintiffs in error.

*Cumming, Nixon, Eve, Waller & Capers, Joseph B. Cumming,* contra.

FELTON, Chief Judge. The facts stated in this opinion are based on admissions in the pleadings or stipulations by the parties. The 1955 contract by its terms supersedes a contract made in 1952. We think the 1955 contract is clear, plain and unambiguous even without reference to the 1952 contract. The body of the 1955 contract provides that all future sales and condemnations of real estate classified as property originally leased shall be the property of the lessor. The word "all" excludes exceptions. If the parties had desired to except from the provisions of the 1955 contract condemnations wherein separate awards were made to the respective parties the exception could have been easily expressed. The use of the word "similarly" before the word "sold" in the preamble cannot reasonably be held to mean joint sales or condemnations (1) because it only modifies "sold" and does not affect condemnations even if it means joint sales and (2) because the statements in the preamble must give way to the unambiguous and all-inclusive undertaking in the body of the contract. The same is true of any other similar expression in the preamble. The stipulation of facts shows that in all sales or condemnations prior to the 1955 contract the sales or condemnations were in fact or effect joint sales or resulted in a single award, and lessees contend that these facts show that separate award transactions were not contemplated. Just for the purpose of answering the lessees' contention and not necessarily to support our conclusion, though indeed it does strengthen it, we shall refer to the precedents in sales and condemnations,

the 1952 contract and its purpose. The history of the disposition of funds received from the sale or condemnation of land owned by lessor and under lease to lessees is substantially as follows: prior to the contract of 1952 such funds were generally held by the lessees for the account of the lessor. For a while such funds were held in what was called a "real estate account" and were used to purchase other property. The lessees had the use of the funds or property bought with the real estate funds in the same way as they had use of the property sold or condemned. Prior to the agreement of 1952 these funds were either held by the lessees for the account of the lessor, the lessees receiving the income therefrom, or held by the lessor with the income therefrom payable to the lessees for the remainder of the lease. There are frequent statements in the statement of facts that various proceeds from the sales and condemnations of particular tracts were to stand, or stood, in lieu of the property sold or condemned. The 1952 agreement made formal the informal arrangement above described. In a recital in the 1952 agreement there is the expression "proceeds of such sales or condemnation proceedings, which represent and stand in place and stead of the real estate so sold or condemned." In the body of the 1952 agreement there is the expression "The corpus of the proceeds of sales or condemnations of property shall stand in lieu of said property." There was no disagreement of the parties as to the construction of the 1952 agreement except as to whether or not land which had been acquired by the lessees subsequently to the lease occupied the same status as the land originally included in the lease or agreed to be considered as being originally included. The 1955 agreement was entered into to incorporate the 1952 agreement with only two differences: (1) the 1955 agreement was not revocable by either party and (2) there was postponed until the expiration of the lease the question whether or not the land acquired by the lessees subsequently to the original lease should be considered in the same category as the land originally leased with reference to the final disposition of the proceeds from sales or condemnations. The 1955 agreement provided that proceeds of sales and condemnations of property originally leased should belong to the lessor and that the disposition of proceeds of property acquired subsequently to

the original lease would be decided upon after the expiration of the lease.

While it is true that the sales and condemnation proceedings did not involve the receipt by the parties of separate sums, such fact does not preclude the idea that the parties intended that the agreements would apply to sales and condemnations where the parties received separate sums in cases of sales or condemnations. The parties could not control how a court would order the condemnation money paid. In a condemnation such as the one here involved, and every such case where one party holds a fee simple title and others own leases or lesser interests, both parties are interested in the *proceeds of the total amount required to be paid* by the assessors or court. The proceeding is an integral thing, even if the various parties holding different interests get different amounts. The parties are charged with a knowledge of the law and that separate sums could be awarded. Furthermore, if the agreements are construed as the lessees contend, it would be in the power of either party to circumvent the agreement by a refusal to sell jointly or to receive a joint award or judgment. There is no contention that in any of the joint sales or awards made the sums due the lessor and lessees respectively could not have been arrived at, otherwise the agreement that both were interested in the joint proceeds is without any foundation and is a hypothetical stipulation. In every condemnation case both parties could have insisted on separate awards or judgments. There is nowhere in either agreement an exception in cases of separate awards. The 1952 agreement certainly has no exception; neither has the agreement of 1955. We are of the opinion that the 1952 and 1955 agreements intended that all proceeds from all kinds of sales and condemnations of lands originally leased belonged to the lessor and that such income after the time of the execution of the lease belonged to the lessees. There is no way in which it can be ascertained whether the agreements here involved would in the long run be more favorable to one party or the other. In one condemnation or sale the lessor's interest may be the greater and in another that of the lessees. The last condemnation happened to be favorable to the lessees. However, the next one may heavily

favor the lessor. We do not see how the ultimate fairness or unfairness of the agreements can affect their intended meaning especially when the question of fairness cannot possibly be determined since the lease has about 20 more years to run.

The 1955 agreement by its express and unambiguous terms demanded the finding of the trial judge. The history of the dealings between the parties, the 1952 contract, its content and purpose, as well as the consideration of the other factors stated in the opinion, strengthen and support his judgment.

The court did not err in rendering the judgment excepted to.

*Judgment affirmed. Nichols, P. J., Frankum, Eberhardt and Russell, JJ., concur. Carlisle, P. J., Bell, Jordan and Hall, JJ., dissent.*

BELL, Judge, dissenting. Speaking for myself and three other members of the court, we vigorously dissent from the majority opinion.

Ascertainment of the intention of the parties is the cardinal rule of construction of a contract, and the intention must be ascertained from the entire contract construed as a whole. *Code* §§ 20-704 and 20-702. It is the duty of the court to put a fair and reasonable construction upon a contract. *Whitney v. Hagan,* 65 Ga. App. 849, 850 (16 SE2d 779). Where two constructions are possible, one unreasonable and the other reasonable, it is necessary to look to the purpose intended and to give to the instrument the reasonable construction which would serve to put into effect the evident purpose of the agreement. *Empire Mills Co. v. Burrell Engineering &c. Co.,* 18 Ga. App. 253, 254 (89 SE 530). Interpretation which results in a more reasonable and more probable construction should be adopted while a construction leading to an unreasonable result should be avoided. *Hutto v. Snap-On Tool Corp.,* 71 Ga. App. 245 (30 SE2d 510). All of the facts and circumstances regarding the parties at the time of the making of the contract are to be resorted to in determining the intention of the parties. *Griffin v. Burdine,* 89 Ga. App. 391, 393 (79 SE2d 562). See also *Hanson v. Stern,* 102 Ga. App. 341 (116 SE2d 237).

The preamble to the contract before us recites that both the lessor and lessees claim rights and interests in the proceeds of

sales and condemnations of property either originally demised or acquired during the term of the lease and used for its purposes, and that the parties claim rights and interests in those proceeds, and are in dispute as to the disposition of certain of them, and may have similar claims as to further sales and condemnations, and, in order to avoid litigation and disputes, desire to place the proceeds of *all such sales* in trust with the trustee for the uses and purposes thereafter set forth, and to preserve without impairment their respective contentions as to their claims.

The introductory paragraph of the 1955 contract clearly recites that it is the desire to place in trust proceeds in which both the lessor and lessees *claim rights and interests*. While section 1 of the contract provides that the lessor and the lessees will deliver to the trustee the proceeds of the sales and condemnations of said real estate, it would appear that the word "said" relates back to the introductory paragraph and, therefore, the intent was to place in trust the proceeds of only those sales and condemnations in which both the lessor and the lessees *claim rights and interests*. As we see it, this contract does not reach out to encompass the separate awards of damages here in dispute which were granted as damages for the *respective interests* of the parties in the property condemned.

By the terms of the condemnation judgment, the lessor received the full damage for its loss, and its interests in the property taken were completely satisfied. The lessee has no interest in the award given to the lessor. The money awarded to the lessor belongs to it alone, and no valid reason appears from the terms of the contract why the lessees should be held to be entitled to receive interest on the lessor's money for the remaining 18 years of the term. Yet this result is a holding of the majority opinion.

Similarly, the award to the lessees was for damages inflicted to the leasehold interests and was substituted for the leasehold value of the property taken. This sum belongs to the lessees alone as it is nothing more than recompense for the loss of use of the lease property during the remainder of the term. It appears to us to be a ridiculous distortion of the plain meaning

of the terms of the agreement, as well as a debasing of elemental property law, to hold, as the majority does, that the lessor has an interest in money awarded to the lessee as the value of the leasehold interest taken through condemnation proceedings.

Each party has been paid for damages to its realty interests condemned, and neither has any claim in the sole interest of the other.

These separate condemnation awards were not within the contemplation of the 1955 agreement *as they were not sums in which both parties could claim rights and interests.*

We would reverse the judgment.

Presiding Judge Carlisle and Judges Jordan and Hall concur in this dissent.