41826.   NATIONAL SURETY CORPORATION
v. ALGERNON BLAIR, INC.

ARGUED FEBRUARY 9, 1966—DECIDED JUNE 14, 1966—REHEARING
DENIED JULY 6, 1966·

*Nall, Miller, Cadenhead & Dennis, James W. Dorsey,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Eugene Partain, Wayne Shortridge,* for appellee.

BELL, Presiding Judge. Here, neither the defendant nor Stauffer, in the absence of assignment of the indebtedness owing Stauffer under the Cullman contract, would have had any greater or lesser rights by virtue of the contractual provision relating to setoff against final payment. Even with that provision a part of the contract, those rights between the original parties would have been the same with respect to setoff as they would have been without the provision. It is common knowledge that payments under construction contracts are frequently the subject of assignment by one to whom payment is forthcoming. Under these circumstances it is clear that the provision was inserted in the contract for the purpose of protecting defendant's right to setoff in the event of an assignment.

*Code* § 85-1803 provides: "All choses in action arising upon contract may be assigned so as to vest the title in the assignee,

but he takes it, except negotiable instruments, subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable." This section, together with *Code* §§ 20-1301—20-1310, ordinarily determines what claims the debtor may set off against the assignee's claim. In this connection see: 3 Williston, Contracts (3rd Ed.) § 432, p. 177, § 433, p. 206; 4 Corbin, Contracts (1951) §§ 896-897, p. 594; 20 Am. Jur. 2d 306, Counterclaim, Recoupment, and Setoff, §§ 87-95; 80 CJS 98, Set-Off and Counterclaim, § 54.

"Equities existing between the assignor and debtor," of course, include the terms and conditions of the contract under which the indebtedness arose. The original parties to the agreement, Stauffer and the defendant, had it within their power to contract as to what claims the debtor could set off. "It would seem very clear that parties may, by agreement, make any debt a setoff. If the agreement be for a consideration, it is binding on the same terms as any other agreement; and if it be executed, it needs no consideration." *Threlkeld v. Dobbins*, 45 Ga. 144, 145; *Long v. Cash*, 54 Ga. App. 764, 768 (189 SE 73). The assignment to plaintiff of sums due and to become due under the contract was subject to the terms of the contract between Stauffer and defendant, with notice of which the plaintiff assignee was chargeable. *Fulton Nat. Bank v. Fulton County*, 144 Ga. 691 (1) (87 SE 1023). On other points, the *Fulton Nat. Bank* case is distinguishable from the instant case in that there the defendant's claim arose under the original transaction, while here defendant seeks to set off claims arising under separate and different transactions.

The cardinal rule of construction is to ascertain the intention of the parties. *Code* § 20-702. In construing a contract it is the duty of the court to give it a fair and reasonable construction. *Whitney v. Hagan*, 65 Ga. App. 849, 850 (16 SE2d 779). "The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other." *Hutto v.*

*Snap-on Tools Corp.,* 71 Ga. App. 245, 247 (30 SE2d 510). A contract will not be so construed as to authorize one of the parties to take advantage of his own wrong, unless it is plain and manifest that such was the intention of the parties. *Finlay v. Ludden & Bates,* 105 Ga. 264, 267 (31 SE 180); *Milledgeville Cotton Co. v. Cary,* 9 Ga. App. 391, 393 (71 SE 503); *C. V. Hill & Co. v. Weinberg,* 67 Ga. App. 44, 48 (19 SE2d 430).

The term "final payment" as used in the provision "except that contractor may deduct from such final payment any sums due to contractor under this subcontract or otherwise," must be construed to mean final payment when due. Thus, it could not have been within the contemplation of the original parties that sums becoming due to defendant after the final payment became due, would be available for setoff through the provisions in the contract relating to setoff. To hold otherwise would be to allow defendant wrongfully to refuse final payment when due and thereafter to advance money to and overpay Stauffer indiscriminately upon other contracts and thus accumulate against Stauffer claims which it could then assert in setoff against the belated final payment to the assignee.

Under this construction defendant could not set off against plaintiff's claim any sums which became due to defendant after August 31, 1962, when defendant received notice of assignment, final payment being then due and payable. It follows that plaintiff's claim was not properly subject to setoff of defendant's claims under the Huntsville and Fayetteville contracts.

Moreover, any claims due defendant on that date which were subsequently paid or settled with defendant could not be set off, even though the record shows that Stauffer remained indebted to defendant in excess of the claims then due. On August 31, 1962, Stauffer was indebted to defendant under the Biloxi and Tuskegee contracts in the amounts of $2,981.25 and $5,784.46, respectively. Defendant thereafter paid Stauffer sums under both contracts far in excess of these amounts. These latter payments clearly show that Stauffer, subsequently to August 31, 1962, had extinguished the claims of $2,981.25 and $5,784.46 by performing work upon the Biloxi and Tuskegee projects having a value in excess of the amounts of these claims. Thus, the

claims were in fact entirely extinguished. The mere fact that the defendant did not deduct these amounts from future payments to Stauffer did not serve to keep the claims extant, but instead, the effect of the defendant's failure to deduct these amounts from the future payments was to create new claims, all of which arose after August 31, 1962, and therefore were not available for setoff against the plaintiff.

It appears from the decision of the Supreme Court reversing the denial of a motion for summary judgment that a judgment of denial is an appealable judgment. *Sirmans v. Allen,* 221 Ga. 703 (146 SE2d 761) where the grant of the motion denied would have constituted a final judgment terminating the case. *Parker v. Averett,* 113 Ga. App. 576 (149 SE2d 199).

The trial court erred in granting summary judgment for defendant, and erred in denying summary judgment for plaintiff.

*Judgment reversed with direction to grant summary judgment for plaintiff in the amount sued for. Jordan, J., concurs. Eberhardt, J., concurs specially.*

EBERHARDT, Judge, concurring specially. I concur fully as to all holdings save that in the last paragraph of Judge Bell's opinion, and concur specially as to that. I must agree that in *Sirmans v. Allen,* 221 Ga. 703, supra, the Supreme Court has indicated that the denial of a summary judgment may be appealed, but no explanation of the apparent holding is carried in that case. It appears to be in conflict with the provisions of the Summary Judgments Act (Ga. L. 1959, pp. 234, 236; *Code Ann.* § 110-1208), that the denial of a summary judgment is not appealable. If this can now be done it is apparently on the theory of a repeal by implication of that provision by § 1 (a) (2) of the Appellate Practice Act of 1965 (Ga. L. 1965, p. 18; *Code Ann.* § 6-701 (a) (2)). Since repeals by implication are not generally favored, and since the provision of the Summary Judgments Act is re-enacted in § 56 (h) of the Civil Practice Act of 1966 (Ga. L. 1966, p. 609), it may well be doubted that a repeal was intended by the legislature. Moreover, I find it difficult to square *Sirmans v. Allen* with *Burnam v. Wilkerson,* 217 Ga. 657 (1) (124 SE2d 389), where it was held that no conflict existed between the provision of the Summary Judgments Act (*Code Ann.*

ce§ 110-1208), that the denial of a summary judgment is not appealable, and former *Code* § 6-701, wherein an appealable judgment was defined in substantially the same terms as in the Appellate Practice Act of 1965 (*Code Ann.* § 6-701 (a) (2)).

There is the possibility that since the main appeal is from an appealable judgment under § 1 (a) (1) of the Appellate Practice Act of 1965 (*Code Ann.* § 6-701 (a) (1)), the cross appellant may be entitled to have the denial of his motion for summary judgment reviewed under § 1 (a) (3) (b) of the Act (*Code Ann.* § 6-701 (a) (3) (b)) providing for review of "all judgments, rulings or orders rendered in the case which are raised on appeal and which may affect the proceedings below . . . *without regard to the appealability of such judgment, ruling or order standing alone. . .*" However, this identical language was in former *Code* § 6-701 and was before the court in *Burnam v. Wilkerson*, 217 Ga. 657, supra, where the appeal was from the overruling of a general demurrer as well as from the denial of a summary judgment.

In any event this question is now certified to the Supreme Court for resolution in another pending case. It may be desirable to afford an appeal from the denial of a summary judgment, but, as I see it, this is not the apparent legislative intent. Whatever the present situation, the attention of the bar is directed to the fact that a denial of a summary judgment will not be appealable when the Civil Practice Act becomes effective March 1, 1967, unless a rule different from that in *Burnam* is to be applied.