AMERITRUST COMPANY, N.A., a National Banking Association, Plaintiff,

v.

C.K. WHITE, Defendant.

Civ. No. 1:90–cv–2691–JEC.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 28, 1994.

**1002**

Robert H. Hishon, Jonathan D. Moonves, Jesse S. Burbage, Mike Bothwell, Atlanta, GA, for plaintiff.

J. Comer Yates, Nations, Yates & Freeman, Atlanta, GA, for defendant.

### ORDER

CARNES, District Judge.

The above-styled case was tried before the Court on October 25, 1993. Plaintiff Ameritrust Corporation, N.A. ("Ameritrust" or "plaintiff" or "counter-defendant"), filed this action seeking to collect monies allegedly owed it as a result of Ameritrust's possession of a certain promissory note[1] (the "note") executed by C.K. White ("White" or "defendant" or "counter-plaintiff"). Ameritrust came to possess the note by taking it as collateral for a loan made to a third-party, Cardinal Industries Services Corporation (CISC), who had possession of it after the note was purportedly assigned to CISC by Cardinal Industries, Inc. ("Cardinal"). Cardinal was the general partner of Amberwood Apartments of Bartow, II, Ltd. ("Amberwood"), in which defendant was the sole limited partner. Defendant executed the note as part of a transaction in which he subscribed the entire limited partnership interest in Amberwood.

Defendant claims he is not liable to Ameritrust for the monies owed on the note, because: (1) Ameritrust does not have proper title to the note, as it was not properly assigned from Amberwood to CISC, (2) Cardinal's assignment of the note constituted a breach of Cardinal's fiduciary duties as general partner of Amberwood, (3) the various breaches of Cardinal's duties under the partnership agreement constituted a failure of consideration and thus, defendant is excused from further performance under the note, (4) conversion of the note by Cardinal excuses defendant's further performance under the note, and (5) the proper exercise of defendant's option to put the payments remaining due under the note to Cardinal, shifted the repayment obligation to Cardinal.

A counterclaim also exists in this case. Defendant, as a representative of Amberwood, contends that Ameritrust is liable to Amberwood for conspiring with Cardinal in the conversion of the note, as none of the loan proceeds secured by the note benefitted Amberwood. Defendant contends that Ameritrust should have to pay the value of the note, as well as punitive damages, attorney fees and costs of litigation, to Amberwood.

*Findings of Fact and Conclusions of Law*

A. *Plaintiff's Claims on the Notes.*

1. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1332 and 1348 because

---

**1.** In its order of October 20, 1993, the Court determined that the note at issue in this case is not a negotiable instrument governed by Article Three of the Uniform Commercial Code. Consequently, the statutory and common law of Georgia regarding ordinary contracts governs the Court's determinations in this case.

the parties are of diverse citizenship and the value of the matter in controversy exceeds fifty thousand dollars ($50,000), exclusive of interest and costs.

2. On June 30, 1986, defendant subscribed the entire limited partnership interest in Amberwood by making a cash payment of $127,890 and by signing two promissory notes for a total of $769,090.

3. Prior to the closing, defendant was furnished an investment disclosure document, entitled Private Placement Memorandum ("PPM"), in order to comply with applicable state and federal securities laws with respect to the limited partnership shares being offered for sale to defendant.

4. The PPM was dated June 26, 1986 and detailed the nature of defendant's proposed investment in Amberwood, including the size of defendant's investment, schedule of payments, relevant risks, potential returns, tax implications, potential conflicts of interest, and accounting projections.

5. On June 30, 1986, at the time of the closing on his interest in Amberwood, defendant signed a package of documents associated with his purchase of the limited partnership interest.

6. The documents signed by defendant were part of a standard "subscription" package that Cardinal required to be signed by all investors in its limited partnership ventures.

7. The standard package of documents signed by defendant was divided into sections, including:

*Section One*—An Investor Suitability disclosure.

*Section Two*—A Subscription Agreement and Power of Attorney.

*Section Three*—Two Promissory Notes.

*Section Four*—Purchaser Representative's Letter (If Applicable).[2]

8. The Investor Suitability disclosure required defendant to recite indicia of his qualifications to make the subject investment in Amberwood.

9. The Subscription Agreement and Power of Attorney contained an agreement for the purchase of the entire limited partnership interest in Amberwood and provided the general partner, Cardinal, with a power of attorney to act on behalf of defendant as necessary to qualify or maintain Amberwood as a limited partnership.

10. The promissory notes provided that defendant would make payments to Amberwood, or to whom Amberwood had assigned the notes, according to the following schedule of payments:

Promissory Note 1:

$176,120 due and payable on June 1, 1987, and

$146,440 due and payable on June 1, 1988.

Promissory Note 2:

$150,780 due and payable on June 1, 1989,

$153,580 due and payable on June 1, 1990, and

$142,170 due and payable on June 1, 1991.

11. In addition to the standard package of documents, at defendant's insistence, an additional document, which amended Amberwood's partnership agreement (the "Partnership Agreement"), was executed on June 30, 1986, by Cardinal, in its capacity as the general partner, and by Cardinal Industries Development Corporation ("Cardinal Development"), as the sole original limited partner in Amberwood.

12. Also on June 30, 1986, the PPM was amended at defendant's insistence.

13. The amendments to the Partnership Agreement and the PPM were identical in all material respects and provided, *inter alia*, a means by which defendant was granted the right to limit his investment in Amberwood by shifting the obligation of making future payments under the notes to Cardinal. Am-

---

2. There is no evidence before the Court indicating that defendant made use of a purchaser's representative in making his decision to invest in Amberwood. There is also no evidence that defendant or any putative representative ever signed Section Four of the subscription package documents.

berwood made these amendments to the PPM and the Partnership Agreement to induce defendant to buy into Amberwood.

14. The amendments to the PPM and Amberwood's partnership agreement provides, in relevant part:

In consideration of the subscription of all thirty-five (35) units by the Limited Partner(s), and in further consideration of the 1986 payment made by the Limited Partner(s) and the 1987 payment-to-be-made by the Limited Partner(s), Cardinal Industries, Inc. grants to the Limited Partner(s) the *option to modify their total investment in the Partnership under the terms and conditions contained herein:*

(a) *The payment schedule is modified* to provide for $127,890 at the signing of this agreement and for $176,120 due June 1, 1987; $146,440 due June 1, 1988; $150,780 due June 1, 1989; $153,580 due June 1, 1990; and $142,170 due June 1, 1991.

\*    \*    \*    \*    \*    \*

(c) The Limited Partner(s) are *required to make the 1986 and 1987 payments,* and their interest shall vest on a pro-rata basis for said payments at the time of the 1987 payment. The Limited Partner(s) have the *option to put to Cardinal Industries, Inc. their obligations for each of the years 1988, 1989, 1990 and 1991,* and in the event the option is exercised in any of these years, Cardinal Industries, Inc. agrees to purchase for its own account (but may resell) that pro-rata share of the Limited Partnership interest. *The option to put must be exercised in writing by the Limited Partner(s) and must be delivered to Cardinal Industries, Inc. at least forty-five (45) days prior to the June 1 payment date for the year in which it is exercised.*

\*    \*    \*    \*    \*    \*

(e) The option to the Limited Partner(s) to put any year's payment to Cardinal Industries, Inc. must be exercised separately for each of the years of the option, under the terms and conditions set forth herein.

June 30, 1986 Amendment to the Am. Certificate and Agreement of Ltd. Partnership (emphasis added).

15. Plaintiff contends that the note which is the subject of this lawsuit is an independent contract that cannot be modified by other separate contracts between the parties to the note.

16. Defendant contends that the note is but a part of one contract that evidences the entire agreement between defendant, Amberwood and Cardinal.

17. "A contract is not necessarily contained in a single paper, and our Code provides ... that all contemporaneous writings shall be admissible to explain each other." *Manry v. Hendricks,* 66 Ga.App. 442, 453, 18 S.E.2d 97 (1941); *see also* O.C.G.A. § 24–6–3(a) (1982).

18. "Where a promissory note is given contemporaneously with a written agreement between the same parties which states the consideration of the note, the two instruments constitute one contract and are to be construed together." *Wardlaw v. Woodruff,* 175 Ga. 515 (12), 165 S.E. 557 (1932).

■ 19. Writings not executed at precisely the same moment in time are nonetheless "contemporaneous" if executed as part of one integrated transaction. *Manry,* 66 Ga.App. at 453, 18 S.E.2d 97.

20. The Subscription Agreement, the amendment to the Partnership Agreement, and the notes were all executed on June 30, 1986.

21. The Subscription Agreement cross-references the Partnership Agreement and the notes.

22. The Partnership Agreement cross-references the notes and the Subscription Agreement, and the amendment to the Partnership Agreement expressly modifies the payment terms recited in both the notes and the Subscription Agreement to provide that the limited partner(s) have the power to shift the obligation to make certain payments to Cardinal.

23. The notes cross-reference the Partnership Agreement.

24. Perhaps most importantly, the PPM cross-references the Partnership Agreement, the Subscription Agreement, and the notes,

among a host of other agreements involving Amberwood and Cardinal affiliates, in describing defendant's proposed investment in Amberwood. The PPM also includes the same express revisions to the payment terms contained in the notes and the Subscription Agreement as the amendment to the Partnership Agreement.

25. Under the circumstances, the amendment to the Partnership Agreement, the Subscription Agreement and the notes, which were executed contemporaneously, constitute one integrated transaction and, thus, one contract. Accordingly, each document contains terms of the entire agreement and understanding between defendant, Amberwood and Cardinal with respect to the subscription and financing of the entire limited partnership interest in Amberwood.[3]

26. "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." O.C.G.A. § 13–2–2(4) (1982).

27. The notes contain the payment schedule and obligations of defendant with respect to the purchase of his interest in Amberwood, as qualified by the amendment to the Partnership Agreement.

28. Defendant had an unqualified obligation to pay Amberwood $127,890 on June 30, 1986 and $176,120 on June 1, 1987.

29. Defendant made the 1986 and 1987 payments totaling $304,010, $127,890 in 1986 and $176,120 in 1987, to Amberwood on or about the specified dates.

30. Defendant had a contingent obligation to pay Amberwood $146,440 on June 1, 1988, if, and only if, defendant failed to properly exercise his option to put such payment to Cardinal on or before April 15, 1988.

31. Defendant did not exercise his option to put the payment and subsequently paid Amberwood $146,440 on or about the specified date, thus paying Promissory Note 1 in full.

32. Defendant had a contingent obligation to pay Amberwood $150,780 on June 1, 1989, if, and only if, defendant failed to properly exercise his option to put such payment to Cardinal on or before April 15, 1989.

33. Defendant exercised his option to put the June 1, 1989, payment to Cardinal by letter dated April 7, 1989.[4]

34. Defendant had a contingent obligation to pay Amberwood $153,580 on June 1, 1990, if, and only if, defendant failed to properly exercise his option to put such payment to Cardinal on or before April 15, 1990.

34. Defendant exercised his option to put the June 1, 1990, payment to Cardinal,

---

**3.** Plaintiff asserted that Judge Murphy's denial of defendant's Motion for Summary Judgment in *Signet Bank v. Weaver*, No. 4:90–CV–49–HLM (N.D.Ga. Sept. 18, 1991), disposes of defendant's arguments regarding the effectiveness of the put option as a defense in this case. It appears, however, that the defendant in *Weaver* did not argue, as defendant did in the case at bar, that all the documents executed as part of the subscription were in fact one contract. Judge Murphy's order is devoid of any discussion regarding the legal significance of the contemporaneous execution of documents as part of an integrated transaction. Thus, while the facts underlying the two cases are similar, the legal bases of Judge Murphy's denial of summary judgment in *Weaver* and this Court's determination of this case do not rest on the same legal foundations. Accordingly, plaintiff's reliance is misplaced.

**4.** Plaintiff has argued that there is no evidence, other than defendant's own testimony, that defendant exercised his option to put in a timely

manner because Cardinal failed to date stamp defendant's letters as they were received. Plaintiff also argues that defendant's attempt to exercise his option was not effective because it was not mailed to the proper address specified in ¶ 21.01(a) of the Partnership Agreement. The evidence establishes unequivocally, however, that defendant's letter was in fact received by Cardinal and retained in Cardinal's and Amberwood's business records. Contrary to plaintiff's arguments, the Court finds defendant's testimony credible with respect to the date he mailed the letter to exercise his option. Further, according to the provisions of ¶ 21.01 of the Partnership Agreement, notices are deemed to be received four days after being mailed. Thus, the notice is deemed to have been received on April 11, 1989. Moreover, the record is completely void of any objection by Amberwood or Cardinal to the timeliness of defendant's notice or the address to which such notice was sent. Accordingly, the Court finds that defendant exercised his option to put properly.

through his attorney, by letters dated February 8 and March 13, 1990.[5]

35. Defendant had a contingent obligation to pay Amberwood $142,170 on June 1, 1991, if, and only if, defendant failed to properly exercise his option to put such payment to Cardinal on or before April 15, 1991.

36. Defendant exercised his option to put the June 1, 1991, payment to Cardinal by letter dated March 25, 1991.[6]

■ 37. According to the express terms of the contract between defendant, Amberwood and Cardinal, defendant has fully performed his obligations under such contract. Accordingly, defendant owes Amberwood no further payments.[7]

38. On September 30, 1987, the notes used to finance the subscription of Amberwood's entire limited partnership interest were purportedly assigned by Cardinal, acting as Amberwood's general partner, to CISC. In turn, CISC purported to assign the notes to plaintiff as security for a loan of $592,970 from plaintiff to CISC. The funds from this loan were deposited in a general corporate bank account maintained by Cardinal.

■ 39. Assuming, without deciding, that the notes were properly assigned to plaintiff, the question remains whether defendant may be obligated to pay plaintiff under the notes in the absence of any obligation to make any further payments to Amberwood.

40. The assignment of the note at issue in this case is governed by O.C.G.A. § 44–12–22, which provides, in relevant part, that an assignee takes a chose in action "subject to the equities existing between assignor and debtor at the time of the assignment...." O.C.G.A. § 44–12–22 (Supp.1993).

41. Under the provisions of O.C.G.A. § 44–12–22, "an assignee can acquire no greater rights than his assignor had...." *Healey v. Morgan*, 135 Ga.App. 915, 219 S.E.2d 628, 629 (1975); *see also Algernon Blair, Inc. v. National Sur. Corp.*, 222 Ga. 672, 673, 151 S.E.2d 724, 725 (1966) ("Certainly the assignee has no more rights under the contract than the assignor would have in dealings with the other contracting party.").

42. " 'Equities existing between the assignor and debtor,' of course, include the terms and conditions of the contract under which the indebtedness arose." *National Sur. Corp. v. Algernon Blair, Inc.*, 114 Ga. App. 30, 32, 150 S.E.2d 256, 258, *rev'd on other grounds*, 222 Ga. 672, 151 S.E.2d 724 (1966); *see also Fulton Nat'l Bank v. Fulton County*, 144 Ga. 691 (1), 87 S.E. 1023 (1916) ("The assignment to the bank by the contractor of amounts allegedly to be due under the

---

**5.** As with the June 1, 1989, payment, the Court finds that defendant gave proper notice of his intent to exercise his option.

**6.** The Court finds plaintiff's arguments with respect to the effectiveness of defendant's notice equally unavailing with respect to the notice given in 1991.

**7.** Plaintiff has argued that any option to put held by defendant became unenforceable upon Amberwood's insolvency. Plaintiff relies on O.C.G.A. § 14–9A–47 and *Mills v. Kochis*, 132 Ga.App. 492, 208 S.E.2d 352 (1974), to support its position. Plaintiff's reliance is misplaced. The cited authority forbids, until all creditors other than the partners have been paid, enforcement of an agreement by a general partner to indemnify a limited partner against loss of his capital contribution or to reimburse a limited partner's capital contribution, using partnership funds or funds of the general partner.

The case at bar presents the different circumstance of an agreement between the partnership, the general partner and the limited partner to allow the limited partner to limit the amount of his total contribution in the partnership. Under the express terms of the agreement, defendant's capital contributions to the partnership were staged over a period of years. Defendant was unconditionally obligated to make capital contributions totalling $304,010 and possessed the power to limit his total contribution, and his total vested interest in the partnership, to this amount. Further, defendant had the option to invest up to $896,980 in exchange for the entire limited partnership interest in Amberwood. Defendant's decision to exercise his option to put a particular payment resulted in a shifting of the obligation to Cardinal to make such payment. Thus, rather than seeking reimbursement, defendant simply declined to make the capital contributions at issue. Accordingly, the contingency to Cardinal's potential liability was removed and Cardinal became obligated to make the payments, once conditionally owed by defendant, to *Amberwood;* Cardinal was never in the position of indemnifying or reimbursing the limited partner, the defendant, and, thus, the authority cited by plaintiff is not on point.

contract was subject to the terms of the contract...").

43. Thus, plaintiff acquired no rights in excess of those held by Amberwood prior to any assignment that may have been made. Accordingly, defendant owes no further payments under the contract at issue in this case.

### B. *Defendant's Counterclaim.*[8]

44. Supplemental jurisdiction to hear defendant's counterclaim is vested in this Court pursuant to 28 U.S.C. § 1367.

■ 45. Absent an underlying civil wrong, there is no cause of action for a civil conspiracy in and of itself. *First Fed. Sav. Bank v. Hart*, 185 Ga.App. 304, 305, 363 S.E.2d 832 (1987) (citing *Jones v. Spindel*, 113 Ga.App. 191, 193, 147 S.E.2d 615 (1966)).

46. Assuming, without deciding, that Cardinal did breach its fiduciary duty to Amberwood and cause the conversion of the notes for Cardinal's, rather than Amberwood's, benefit, Ameritrust is not liable to Amberwood for such conversion unless it conspired with Cardinal to effect the conversion.

47. "'A conspiracy is a combination to accomplish an unlawful end, or to accomplish a lawful end by unlawful means.'" *Foster v. Sikes*, 202 Ga. 122, 125, 42 S.E.2d 441, 443 (1947) (quoting *Luke v. DuPree*, 158 Ga. 590, 124 S.E. 13 (1924).

■ 48. It is not necessary to produce direct evidence of agreement between the alleged coconspirators. *Outside Carpets, Inc. v. Industrial Rug Co.*, 228 Ga. 263, 269, 185 S.E.2d 65, 68 (1971). Such agreement may be inferred from circumstantial evidence such as "acts done, the relation of the parties, the interest of the alleged conspirators and from other circumstances." *Id.*

49. While it is true that circumstantial evidence will suffice to prove an alleged conspiracy, "the law does not authorize a finding

that conspiracy exists merely because of some speculative suspicion...." *First Fed. Sav. Bank*, 185 Ga.App. at 305–06, 363 S.E.2d 832.

■ 50. The evidence introduced by defendant, on behalf of Amberwood, in support of a finding that a conspiracy existed between Cardinal and Ameritrust is quite sparse. Defendant (counter-plaintiff) points to the following indicia to support his conspiracy theory:

a. Ameritrust was on notice that Cardinal was only authorized to use the notes as collateral for loans on behalf of Amberwood because Ameritrust had access to the PPM and Partnership Agreement.

b. Ameritrust wired the proceeds of its loan to CISC to a corporate account maintained by Cardinal, rather than a segregated account specifically for use on behalf of Amberwood.

51. Without more, the Court finds that defendant (counter-plaintiff) has failed to carry his burden of proving that Ameritrust agreed to, or acted to, further any possible conversion of Amberwood's property that may have been perpetrated by Cardinal.

52. There simply is not sufficient evidence to support a finding that Ameritrust knew that the funds deposited in Cardinal's general account would not be, or had not previously been, allocated for the benefit of Amberwood.

53. Ameritrust dealt with Cardinal and CISC at arm's length and in a manner consistent with a long history of dealings between the various Cardinal affiliates, including the numerous limited partnerships for which Cardinal served as the general partner, and Ameritrust, as well as a number of other lenders.

54. Although Ameritrust's lending practices with regard to Cardinal and its affiliates were not as cautious and prudent as they

---

8. Ameritrust has argued that the counterclaim is barred by the applicable statute of limitations. Defendant filed his motion for leave to add the counterclaim prior to the running of the statute of limitations, but his motion was not granted until after the statute had run. Defendant argues that, having filed for leave to add the counter- claim prior to the running of the statute, the filing of the counterclaim itself relates back so as to make such filing timely. For purposes of deciding this case, the Court will assume, without deciding, that the counterclaim was timely filed.

might have been, these practices do not amount to a showing of a conspiracy to convert Amberwood's property.

55. Thus, assuming Cardinal did convert Amberwood's property by purporting to assign the notes to secure an improper loan, the evidence does not support a finding that Ameritrust agreed to participate in such conversion. Accordingly, Ameritrust is not liable to Amberwood for any loss it may have suffered from the alleged conversion of the notes.

C. *Conclusion.*

57. For the foregoing reasons, the Court grants judgment for defendant Mr. White, on plaintiff's claims and for counter-defendant, Ameritrust, on the counterclaim. It is further ordered that defendant's Motion for Leave to File a Response to Plaintiff's Post-trial Reply [97–1] is **DENIED** as moot.

SO ORDERED.