### 6332. LUDDEN & BATES SOUTHERN MUSIC HOUSE *v.* DAIRY AND FARM SUPPLY COMPANY.

1. The construction of contracts is a prerogative of the courts which is delegated to the jury only when there are ambiguous expressions in the contract and resort must be had to aliunde testimony in order to clarify the meaning of the language used, as it was understood by the parties, and thus make plain their real intention.
2. Even if the judge of the municipal court of Atlanta could direct a verdict where one of the parties has demanded a trial by jury, the withdrawal of this case from the jury and the direction of a verdict was error, because the evidence for the plaintiff did not demand the finding that the sum stipulated to be paid by the defendant was due under the terms of the contract. This is true even though the contract itself be held to be unambiguous and be construed as plainly stipulating that payment for the "caps" was due upon their delivery to the plaintiff, instead of that payment for the "caps" should be postponed until after the "caps" had been redelivered to the different retail dairies of Atlanta.

DECIDED FEBRUARY 4, 1916.

Complaint; from municipal court of Atlanta. January 21, 1915.

*Arnaud & Donehoo,* for plaintiff in error.

*Hewlett, Dennis & Whitman,* contra.

RUSSELL, C. J. Dairy and Farm Supply Company sued Ludden & Bates Southern Music House for $75, claimed to be due it on the following contract by the defendant: "Atlanta, Georgia. We, for and in consideration of the sum of one hundred and fifty thousand caps, delivered to the Dairy & Farm Supply Company, to be delivered by them to the different retail dairies of Atlanta, Georgia, bearing our advertisement, agree to pay to the Dairy & Farm Supply Company the sum of seventy-five ($75) dollars, payable after the delivery of said caps to the Dairy & Farm Supply Company. Dated this 24th day of June, 1914." There are exceptions to the court's refusal to allow certain amendments, and to rulings excluding testimony which, it is insisted, would have tended to interpret the meaning of the contract. It does not

appear that the trial court erred in any of the rulings excluding testimony, since it does not appear in any of the assignments of error upon this ground that the plaintiff in error informed the court what answer would be made by the witness to the questions which he proposed to ask. The court properly held the contract in question to be unambiguous. That being true, the construction of the paper which formed the basis of the suit was for the court, and evidence which sought to give the instrument a different meaning from that expressed in it was clearly inadmissible. The construction of contracts is a prerogative of the courts, which is delegated to the jury only when there are ambiguous expressions in the contract and resort must be had to aliunde testimony in order to clarify the meaning of the language used, as it was understood by the parties, and thus make plain their real intention.

It is insisted in the argument that the contract was intended to fix the time of payment after the delivery of the caps *by* the Dairy and Farm Supply Company, instead of *to* the Dairy and Farm Supply Company, because, as insisted, it must have been the intention of the parties that the payment should be made after the caps in question had been delivered or distributed by the Dairy and Farm Supply Company to the different retail dairies of Atlanta. If the word *by* had been used, obviously this would have been the true meaning of the contract. But it is not to be assumed that the word *to* was used by mistake or inadvertently, and such an assumption is not an inevitable result when the contract is considered as a whole in order to ascertain the true intent of the parties. There is nothing in the contract to indicate from whom the Dairy and Farm Supply Company was to obtain the 150,000 caps. It is just as reasonable to suppose that it was to obtain them from the makers or printers of such articles as that they were to be delivered to it by the Ludden & Bates Southern Music House after obtaining the caps from some one else. If the supply company assumed liability for the making and printing of the caps, upon the delivery of the caps to it by the printers, it would be reasonable that they would expect to obtain from Ludden & Bates Southern Music House the money to discharge this liability; and, to avoid a misunderstanding and several collections, it might have been more convenient to both parties to have the entire amount of $75 discharged in one payment. However, whether the judge con-

sidered this in reaching his conclusion or not, the supply company had the right, if it desired, to have a fixed time of payment, as it did have, and, the defendant having agreed to the time proposed, there was no question of ambiguity to be solved. The contract in question was no more to be explained by parol evidence as to the time of payment than if payment for the entire service had been required to be made in advance and the contract had followed a formal receipt of payment for the entire service. The trial judge properly construed the contract as one under which the Ludden & Bates Southern Music House, relying upon the promise of the Dairy and Farm Supply Company to distribute the caps, was to pay in full whenever the caps were in the hands of the supply company for distribution.

There are several other assignments of error, upon which it is not necessary at this time to rule, because the errors, if any, may not recur upon another investigation of the case, which we feel constrained to order. Pretermitting the consideration of other alleged errors, the defendant was entitled to a new trial because the verdict was not demanded by the evidence, even if the judge of the municipal court had the power to direct a verdict. If there had been a specific assignment of error based upon the ground that in the municipal court the judge has no power to withdraw the case from the jury and direct a verdict, we would set aside the verdict which was directed upon this ground. The defendant had asked a jury trial, in accordance with law, and in any view of the matter the plaintiff was required to prove that 150,000 caps had been delivered to it in compliance with the contract upon which it relied. Under the terms of this contract it was essential for the plaintiff to show that it had procured, or that there had been delivered to it by some one, 150,000 caps as stipulated in the contract. The only evidence upon this point was that of Mr. Steinheimer, the plaintiff's secretary, who testified that "most of said caps were now in the possession of the company." It was not testified, nor is it necessarily to be implied, that the 150,000 caps had ever been delivered to the Dairy and Farm Supply Company to be distributed, so as to entitle the plaintiff to payment. It is true that in testifying the plaintiff said that after the caps were received he made a demand for payment, but the caps to which he referred (in the connection in which the statement was made)

could as well be the "most of the caps" specified in the contract as all of them, and it was therefore a jury question whether all the caps contracted for had been delivered to the Dairy and Farm Supply Company, so as to require payment under the terms of the contract.                                    *Judgment reversed.*