32149. IRVINDALE FARMS INC. *v.* W. O. PIERCE DAIRY INC.

Decided February 3, 1949.  Rehearing denied February 26, 1949.

682

*Smith, Kilpatrick, Cody, Rogers & McClatchey, E. D. Smith Jr.,* for plaintiff in error.

*Augustine Sams, Grigsby H. Wotton,* contra.

SUTTON, C. J. (After stating the foregoing facts.) ■ Each of the notes sued on contained the following provision: "This note is one of a series of twenty three, due monthly, serially and consecutively and aggregating $19,159.00, given in pursuance and subject to the terms of a contract even date herewith." The contract referred to is set out in full in the above statement of facts. It was between W. O. Pierce Dairy Inc. and W. O. Pierce, individually, of the first part, and Irvindale Farms Inc., of the second part, and paragraph 4 thereof provided: "Parties of the first part agree and bind themselves to deliver daily to Irvindale Farms Inc., at its place of business now located at 1139 Spring Street, N. W., Atlanta, Georgia, nine hundred gallons of Grade A raw milk, four percent butter fat, as per standards approved by the health departments of both the City of Atlanta and of the State of Georgia, for the period beginning December 1, 1943, and ending with the cessation of hostilities between the United States of America on the one part and both Germany and the Japanese Empire on the other. It is agreed between the parties hereto that the obligation to deliver nine hundred gallons daily admits of a tolerance of 15 percent. Parties of the first part reserve the option of delivering two hundred of the nine hundred gallons in the form of certified milk, four percent minimum butter fat guaranteed, in bottles, capped, hooded, and ready for retail distribution, same to be full standard quality as prescribed by said health departments." Paragraph 5 of the contract is as follows: "Said Irvindale Farms Inc. has paid W. O. Pierce Dairy Inc. the sum of $841.00 even date herewith, and has executed a series of twenty-three monthly notes, aggregating $19,159.00, each note being in and for the sum of $833.00 payable to W. O. Pierce Dairy Inc., same maturing serially and consecutively beginning January 1, 1944. Said notes by agreement of the parties have been delivered to the Peachtree Road Office of the Fulton National Bank with instructions as follows: (a) To

collect the same as and when each becomes due and payable (applying the proceeds thereof according to the instructions of parties of the first part or either of them) provided on maturity date the first parties shall have fully complied with the obligation set forth in paragraph 4 hereof.' (b) If the parties of the first part shall have failed fully to comply therewith, said bank is instructed by the parties hereto to return such note or notes as then may be due and payable to the party of the second part as canceled." Paragraph 1 of the contract stated that W. O. Pierce Dairy Inc. had sold and was thereby conveying to Irvindale Farms Inc. its trucks, trailer, billing machines, bottles, and crates; and in paragraph 2 the parties of the first part conveyed their business of selling milk at retail to the party of the second part; and in paragraph 3 the parties of the first part agreed not to engage in the business of retailing milk within a radius of 25 miles of Five Points in Atlanta for a period of 5 years; and paragraph 6 stated the prices to be paid by Irvindale to the parties of the first part for the delivery of milk as specified in paragraph 4 of the contract.

The plaintiff in error contends that the defendant in error failed to comply with the provisions of paragraph 4 of the contract, in that it failed to furnish the grade and quality of milk as therein specified, and therefore it is not entitled to recover on the notes. The notes were executed contemporaneously with and in pursuance of this contract, and it is specifically stated in the notes that they are subject to the terms of the contract. The notes though payable to W. O. Pierce Dairy Inc., were not delivered to it, but, by agreement of the parties as stated in the contract, they were delivered to the Fulton National Bank with instructions to collect the notes as they became due, provided the parties of the first part had fully complied with the obligation set forth in paragraph 4 of the contract. But if said parties of the first part had failed to comply with the provisions of paragraph 4 of the contract (the delivery of the quantity and quality of milk as therein specified), the bank was instructed by the parties to return the note or notes then due to the party of the second part as canceled. This was all expressly agreed to by the parties to the contract, and it clearly appears that the provision for the delivery of milk was of vital importance to

this contract. The Pierce Dairy was selling its physical property, its business, list of customers, name and good will to Irvindale Farms, and obligated and bound itself to deliver the quantity and quality of milk as specified in the contract. It seems that the furnishing of the milk was considered by the parties as one of the most important things contained in the contract, so important, in fact, that a failure on the part of the parties of the first part to fully comply with this provision would cancel the notes due and payable and require their surrender by the bank to Irvindale. The obligation of the plaintiff to furnish the milk was expressly tied in and bound up with the obligation of the defendant to pay the notes. The contract referred to and described the notes and stated the terms and provisions of the sale, and the notes referred to the contract and stated that they were given subject to its terms. In these circumstances the notes and contract are to be construed together as constituting one contract. *Wardlaw* v. *Woodruff*, 175 *Ga.* 515, 517 (12) (165 S. E. 557) ; *Montgomery* v. *Hunt*, 93 *Ga.* 438 (2) (21 S. E. 59). The consideration of the notes, among other things, included the right to have Pierce Dairy deliver 900 gallons of milk, as specified in the contract.

■ Irvindale was to pay for the milk as specified in paragraph 6 of the contract, and this, of course, was in addition to the cash payment and the amount of the notes stated in the contract, but the furnishing of the milk by Pierce Dairy was made absolutely essential by the express terms of the contract, before it was entitled to collect the notes. This was a condition precedent to the plaintiff's right to collect the notes. Irvindale Farms was taking over the entire retail business of Pierce Dairy, with its list of customers, and it was necessary for Irvindale to have the milk specified in the contract in order to supply its new customers. Irvindale, from a small beginning, had built up its business until it was the largest milk distributor in Atlanta, and it had done this, according to the record, by furnishing its customers with a quality product of milk, and, in order for it to keep this up, it was necessary for it to have the grade and quality of milk specified in the contract. To further illustrate and show how important the parties considered the provision and obligation in the contract for furnishing the milk, they not only

provided for the cancellation and surrender of the notes for a failure by the parties of the first part to fully comply with the obligation in this respect, but they went further to safeguard and preserve their rights and obligations by expressly providing that the contract could not be assigned by the parties of the first part without the written consent of the party of the second part, and the notes were delivered to the bank with instructions to hold and handle as specified in paragraph 5 of the contract. We think that the parties clearly intended for the contract to be entire and indivisible (Code, § 20-112), and they conditioned the payment of the notes on the delivery of the milk as specified. The contract was pleaded by the defendant and introduced in evidence; and before the plaintiff would be entitled to recover in this action, it must appear that it complied with the terms of the contract in furnishing the milk, or had sufficient legal excuse for nonperformance in this respect. "When a plaintiff's right to recover on a contract depends on a condition precedent, to be performed by him, he must allege, and prove the performance of such condition precedent, or allege a sufficient legal excuse for its nonperformance." *Griswold* v. *Scott,* 13 *Ga.* 210 (2). This is a well-established principle of law and has been followed in numerous decisions of this court and the Supreme Court since the decision just quoted from was rendered about one hundred years ago. See *Mutual Benefit Health & Accident Assn.* v. *Hulme,* 57 *Ga. App.* 876, 883 (197 S. E. 85), where some of these cases are cited; and Code, § 20-110, which provides: "Conditions may be precedent or subsequent. In the former, the condition must be performed before the contract becomes absolute and obligatory upon the other party. In the latter, the breach of the condition may destroy the party's rights under the contract, or may give a right to damages to the other party, according to a true construction of the intention of the parties."

■ The uncontradicted evidence shows that Pierce Dairy delivered to Irvindale Farms approximately 700 gallons of milk, on November 1, 1944, and that this milk had condensed skim milk and water added to it, and, according to the evidence, such milk was not Grade A raw milk as specified in the contract, but was adulterated milk. The plaintiff in error, Irvindale, refused to accept this milk and notified the defendant in error, Pierce,

that this was a breach of the contract and that no further delivery of milk would be accepted by Irvindale from Pierce. But it was contended by Pierce Dairy that, if there was any variation in the milk delivered by it to Irvindale Farms from the grade of raw milk as specified in the contract, such variation was waived by Irvindale Farms by reason of its knowledge that condensed skim milk and water had been added to the milk so delivered. The only evidence in the record which could have possibly indicated any knowledge on the part of Irvindale that the milk delivered by Pierce under the contract had condensed skim milk and water added to it was that of the witness Taylor, who delivered milk for Pierce Dairy Inc. to Irvindale Farms Inc. He testified: "I told the person receiving the milk at Irvindale Farms that it had condensed skim milk added to it, and that person made no objection. . . The employees of Irvindale knew that some of the cans contained condensed skim, but I do not know the boy's name, except one of the employees of Irvindale was Bill Mims. I don't know the other boy's name." Taylor did not even know the name of one of these boys, the one he said he told about the adulterated milk, and there is no evidence to indicate that either of them had any authority to alter, waive, or vary the terms of the written contract here involved, or that notice to either of them as to the grade of milk delivered would be knowledge to or binding on the Irvindale corporation. Richard L. Hull, President and owner of Irvindale Farms, testified that Pierce was never permitted to deliver and treat as satisfactory and in accordance with the contract any milk with condensed skim milk and water added to it. Joel Eidson, Vice-President and Assistant Manager of Irvindale Farms, testified that he never knew that the milk delivered to Irvindale by Pierce had condensed skim milk and water added to it until the afternoon in November, 1944, when he secured positive proof, which prompted him to write the letter dated November 2, 1944. The evidence was not sufficient to show any waiver on the part of Irvindale Farms as to the grade and quality of milk that was required to be delivered under the terms of the written contract. Consequently, the court erred in charging the jury that, "if you find from the evidence, under the rules given you in charge, that the defendant, Irvin-

dale Farms, Incorporated, knew that the milk furnished by W. O. Pierce Dairy, Incorporated, was cut to four percent butter fat content by the use of condensed skim, and participated in the cutting of said milk and in that event the provision of the contract providing that milk should be furnished as per standards approved by the Health Department of both [the] City of Atlanta and the State of Georgia, and according to the requirements of the contract, would be waived; that is, if you believe that they participated in this transaction, or in this cutting of the milk, to such an extent that it ratified or acquiesced in this act, then I charge you that the defendant would have waived this requirement, and would be liable on the notes, if you believe this contention, that the notes were given in consideration of the furnishing of the milk, as well as for the physical property, which is  denied by the plaintiff," as complained of in special ground 6 of the motion.

■ Error is assigned in ground 7 of the motion on the charge of the court which submitted to the jury the matter of constuing the contract and determining what was the consideration of the contract.  We do not think that the contract was ambiguous, and the court should have construed the contract and instructed the jury as to its terms and meaning, and left it to the jury to determine whether or not the parties had complied with its terms.  "The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper reading of an obscurely written word), the jury should find the fact." Code, § 20-701.  "The construction of contracts is a prerogative of the courts which is delegated to the jury only when there are ambiguous expressions in the contract and resort must be had to aliunde testimony in order to clarify the meaning of the language used, as it was understood by the parties, and thus make plain their real intention."  *Ludden & Bates Southern Music House v. Dairy & Farm Supply Co.,* 17 *Ga. App.* 581 (1) (87 S. E. 823).  The court erred in submitting to the jury the matter of construing the contract.

■ It is contended by the defendant in error that the provisions of the contract for the cancellation and surrender of the notes for a failure to comply with the provisions of paragraph

4 of the contract, relating to the furnishing of a certain quantity and quality of milk, constitute a forfeiture and penalty and should not be given effect. By the provisions of the contract a supply of a certain quantity and quality of milk over a continued period of time was secured by Irvindale Farms, and Pierce Dairy secured a continued market for its milk (and, according to the testimony of Pierce, at a premium price). Apparently, it would be difficult, if not impossible, to determine accurately the amount of the actual damages in the event of a breach of the provisions of paragraph 4 of the contract; and the parties in making the contract evidently realized this, for they agreed and expressly provided in the contract what the damage was to be, if Pierce Dairy failed to comply with that portion of the contract as to the delivery of milk, that is, the notes as they became due were to be canceled and surrendered to Irvindale. We think it is clear from the contract that the parties intended for this to be the liquidated damages in the event of such breach. "Damages are given as compensation for the injury sustained. If the parties agree, in their contract, what the damages for a breach shall be, they are said to be liquidated, and unless the agreement violates some principle of law, the parties are bound thereby." Code, § 20-1402. In *Allison* v. *Dunwody*, 100 *Ga.* 51, 55 (28 S. E. 651), the court said: " 'The cases upon the subject of penalty or liquidated damages are very numerous. The result of them seems to be this, that what the courts look at is the real intention of the parties as it is to be gathered from the language they have used. No case that I am aware of has decided that, if it be manifest that the parties meant the sum fixed to be liquidated damages, the court will interfere to frustrate that intention.' " The above principles of law have been applied in numerous cases by this court and the Supreme Court. See also *Tuten* v. *Morgan*, 160 *Ga.* 90 (127 S. E. 143) ; *Martin* v. *Lott*, 144 *Ga.* 660 (87 S. E. 902) ; *Mion & Murray Co.* v. *World Wide Pictures*, 49 *Ga. App.* 539 (176 S. E. 83), and citations. We think that the parties intended for the provision in the contract for the cancellation and surrender of the notes in the event of a failure to comply with paragraph 4 of the contract, with respect to the furnishing of milk as therein specified, to mean just.

what it says; and this provision of the contract as made by the parties should be upheld and given effect, as a provision for liquidated damages, rather than as a penalty or forfeiture.

■ The parties to this action modified and clarified the original contract in certain respects in regard to certified milk in an agreement, effective June 1, 1944, which is set out in the statement of the case, and this agreement expressly provided that its purpose was to vary the original contract of November 30, 1943, only to the extent therein mentioned, said original contract to remain otherwise in full force and effect. The contentions of the defendant in error that this agreement shows an abandonment of the provisions of the contract relating to the furnishing of milk, that it shows the intent of the parties to treat the furnishing of milk as a separate and distinct agreement from the other provisions of the contract, and that it shows that the agreement relating to the furnishing of milk has no relationship to the present action, and similar contentions in respect to this latter agreement, are without merit.

■ The trial court erred in overruling the defendant's motion for a new trial for the reasons stated in the preceding opinion.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232; Code, Ann. Supp., § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment reversed. Sutton, C. J., MacIntyre, P. J., Gardner and Parker, JJ., concur. Felton and Townsend, JJ., dissent.*

FELTON and TOWNSEND, JJ., dissenting. Assuming that the contract was an entire contract and that the provision for the cancellation of the notes under certain circumstances was one for liquidated damages rather than a penalty, we do not agree with the conclusion of the majority that the failure to strictly comply with paragraph 4 of the contract during any one month had the effect of canceling the notes remaining and not mature. Paragraph 5 (a) of the contract provides that as to *each note as and when it becomes due* it shall be collected *provided* paragraph 4 of the contract had been complied with, and paragraph 5 (b) provides that each note *as it becomes due* shall be can-

celed if paragraph 4 had not been complied with. It is clear to us that the intention of the parties was to insure a compliance with paragraph 4 of the contract from month to month by fixing a damage for a breach within any one month until all the notes were paid or canceled, at $833 per month. The contract does not mean that for one violation of paragraph 4 all remaining notes not due would be canceled. It means that the notes due the first of the month after a failure to comply with paragraph 4 are to be canceled, and that Pierce could thereafter comply or attempt to comply and go on with the contract. In order to be entitled to a judgment, the plaintiff had to prove a compliance with the contract each month next prior to the maturity of the particular note on which judgment was sought or show a reason why compliance was not necessary. A verdict was demanded for the defendant on the note due November 1, 1944, because paragraph 4 was not complied with on November 1, 1944. A verdict was demanded for the plaintiff on the remaining notes for the reason that the defendant notified the plaintiff on November 2 that it would not accept performance of paragraph 4 thereafter. This was an anticipatory breach of the contract, which relieved the plaintiff from thereafter tendering milk under the contract, and which in the view we take of the contract the plaintiff had a right to do. The judgment should be affirmed with direction that the amount of recovery represented by the amount of the note due November 1, 1944, with interest thereon, be written off.