United States Court of Appeals,

Eleventh Circuit.

No. 94-8370.

AMERITRUST COMPANY, N.A., a national banking association, Plaintiff-Counter Defendant-Appellant, Cross Appellee,

v.

C.K. WHITE, Defendant-Counterclaimant-Appellee, Cross Appellant.

Feb. 6, 1996.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:90-CV-2691-JEC), Julie E. Carnes, Judge.

Before TJOFLAT, Chief Judge, BARKETT, Circuit Judge, and CLARK, Senior Circuit Judge.

CLARK, Senior Circuit Judge:

This is a suit on a promissory note by the owner of the note, plaintiff-appellant Ameritrust Company, N.A. ("Ameritrust"), against the maker, defendant-appellee C.K. White ("White"). White executed the note as part of the purchase price of a limited partner's share in a limited partnership known as Amberwood Apartments of Bartow County, II, Ltd. ("Amberwood"). White made the note payable to Amberwood. Thereafter, Amberwood's general partner, Cardinal Industries, Inc. ("Cardinal"), endorsed the note on behalf of Amberwood to one of Cardinal's affiliates, Cardinal Industries of Georgia Service Corporation ("CISC"). CISC subsequently endorsed the note to Ameritrust as security for a loan from Ameritrust to CISC.

The district court held that White was not liable on the note after determining, first, that the note was not a negotiable instrument and, second, that White had a valid defense to payment

of the note, having properly exercised an "option to put" that relieved him of liability. We agree with the district court that the note is not a negotiable instrument. We disagree, however, that the option to put was a valid defense, finding instead (1) that the option to put was an agreement between White and Cardinal and the latter was not a party to the note transaction underlying Ameritrust's cause of action and (2) that even if Cardinal were a party to the note transaction through some inter-corporate relationship with CISC, White would be barred from making a claim (or defense) against Cardinal by the Georgia Uniform Limited Partnership Act. Accordingly, we reverse the district court's judgment in this very difficult case, and we remand the case for the district court to address in the first instance the propriety of the assignment of the note by Amberwood to CISC to Ameritrust.

## I. *FACTS*

Amberwood was formed as a Georgia limited partnership in August 1985 with the filing of a Certificate of Limited Partnership with the Clerks of the Superior Courts of Bartow County, Georgia, and Fulton County, Georgia. The primary assets of the partnership were the land, buildings, and improvements comprising an apartment complex in Cartersville, Georgia. Cardinal was the general partner of Amberwood, as well as the general partner of numerous other real estate limited partnerships.[1] The original limited partner of

---

[1]Cardinal went bankrupt in May, 1989, and at that time was the general partner in approximately 1000 real estate partnerships. *See In re Cardinal Industries, Inc.*, 109 B.R. 755 (Bankr.S.D.Ohio 1990). The bankruptcy court in Ohio succinctly summarized Cardinal's operations:

[Cardinal] was organized in 1954. Since that time

Amberwood was a Cardinal affiliate, Cardinal Industries Development Corporation.

White invested in Amberwood in 1986. In soliciting White to purchase all of the limited partnership interests in Amberwood, Cardinal provided White with a Private Placement Memorandum, which included, among other things, the Amended Certificate and Agreement of Limited Partnership for Amberwood, the Subscription Documents to be executed by investors in Amberwood, and the accounting projections for the project. The Private Placement Memorandum

---

it developed two significant independent businesses. First, it became a major manufacturer of modular housing which is used in various configurations as apartments, motels, retirement villages, single family homes, student housing, day care centers, offices and other shelter products. Its other business was real estate development and syndication of partnership interests in its developed properties, by which it created a captive market for its manufacturing enterprise. [Cardinal] and its wholly owned subsidiaries ... constitute a vertically integrated operation that plans, manufactures, constructs, and ultimately manages and services real estate projects. Through those operations Cardinal developed more than one thousand real estate projects in twenty states and manages approximately 50,000 apartment units, 200 motels, sixteen retirement villages and other miscellaneous properties.

109 B.R. at 757-58.

The Tax Reform Act of 1986 eliminated benefits to investors from operating losses typically experienced by the Cardinal partnership properties during their developmental stages. The bankruptcy court explained that despite the tax law changes, Cardinal continued its primary focus on the manufacture of modules to be developed into properties owned by limited partnerships: "[t]he reason given for that continued activity was a perception that investors would return to the real estate market after a temporary period of adjustment and would want to purchase investment interests in developed properties." *Id*. When the market failed to regenerate as quickly as Cardinal had gambled it would, it was forced to declare bankruptcy.

specifically advised potential investors that "the Promissory Notes representing the deferred contributions of the investors' subscriptions may be assigned or pledged to Cardinal Industries of Georgia Service Corporation, who in turn may pledge the same to a lender as security for a loan."[2]

On June 30, 1986, White subscribed to all 35 units of limited partnership interest in Amberwood. At the closing on this purchase, White executed the subscription documents that Cardinal required to be signed by all investors in its limited partnership ventures. These documents included an Investor Suitability Disclosure, a Subscription Agreement and Power of Attorney, and two Promissory Notes totaling $769,090. The total purchase price for the limited partnership interest was $896,980. White paid $127,890 to Amberwood in cash at closing and executed the two notes to Amberwood for the remainder. The first note was in the principal amount of $322,560, and the second note was in the principal amount of $446,530.

The notes provided that White would make payments to Amberwood, or to holder, according to the following schedule:

First Promissory Note:

$176,120 due and payable on June 1, 1987, and

$146,440 due and payable on June 1, 1988.

Second Promissory Note:

$150,780 due and payable on June 1, 1989,

$153,580 due and payable on June 1, 1990, and

$142,170 due and payable on June 1, 1991.

---

[2]Defendant's Exh. 2 at 26.

Both of the notes contained a forfeiture clause providing that if payments were not timely made, White would lose his interest in the partnership and the partnership would have no obligation to account for any payments previously made. It is this clause that led the district court to its holding that the promissory notes were not negotiable and thus not governed by Georgia's Uniform Commercial Code. The notes also contained a modification clause stating that the notes could not be changed orally, but only by a written agreement attached to the notes.

At the June 30, 1986 closing, at White's insistence, Cardinal and Cardinal Industries Development Corporation (the original limited partner of Amberwood) executed an Amendment to the Amended Certificate and Agreement of Limited Partnership. This document, which was not typically included in Cardinal's standard subscription package, permitted White to put to Cardinal certain obligations under the notes:

. . . . .

> (c) The Limited Partner(s) are required to make the 1986 and 1987 payments, and their interest shall vest on a pro-rata basis for said payments at the time of the 1987 payment. *The Limited Partner(s) have the option to put to Cardinal Industries, Inc. their obligations for each of the years 1988, 1989, 1990 and 1991,* and in the event the option to put is exercised in any of these years, Cardinal Industries, Inc. agrees to purchase for its own account (but may re-sell) that pro-rata share of the Limited Partnership interest. The option to put must be exercised in writing by the Limited Partner(s) and must be delivered to Cardinal Industries, Inc. at least forty-five (45) days prior to the June 1 payment date for the year in which it is exercised.

. . . . .

> (e) The option to the Limited Partner(s) to put any year's payment to Cardinal Industries, Inc. must be exercised separately for each of the years of the option, under the terms and conditions set forth herein.

(emphasis added). This option to put was also set out in an Amendment to the Private Placement Memorandum.

On July 17, 1986, a Certificate of Amendment to Limited Partnership Agreement of Amberwood was filed with the Clerks of the Superior Courts of Bartow and Fulton Counties. This Certificate indicates that Cardinal Industries Development Corporation has withdrawn from the partnership, that White owns all of the limited partnership units, and that White's total contribution to the partnership will be $896,980. The Certificate does not mention the option to put.

In July 1987, White made his first payment on the first note, $176,120. In September 1987, Amberwood, acting by and through its general partner, Cardinal, endorsed both notes to CISC. CISC then endorsed the notes to Ameritrust as security for a loan of $592,970. Although the loan was made to CISC, the proceeds of the loan were deposited in one of Cardinal's bank accounts. Acting without knowledge of the transfer of the notes, White paid the second installment on the first note, $146,440, thus paying off the first note in full. Cardinal forwarded these funds to Ameritrust.

On February 1, 1989, Amberwood defaulted on its first mortgage payment to Crossland Bank. On March 2, 1989, Crossland Bank placed Amberwood in receivership. After receiving notice of the receivership, White decided not to forward any additional funds for the Amberwood project. Thus, by a letter dated April 7, 1989, White gave notice that he was exercising his option to put his June 1, 1989, payment to Cardinal and that he intended to exercise his option to put his 1990 and 1991 payments as well. Cardinal

received White's April 7, 1989, notice, as well as subsequent notices White sent in 1990 and 1991.

Cardinal filed for bankruptcy on May 15, 1989. On January 31, 1990, Ameritrust notified White that it was in possession of the unpaid promissory note and that he was required to make his 1990 payment to Ameritrust. White responded by informing Ameritrust that he had exercised his option to put and, therefore, that he had no further liability on the note. White's response caused Ameritrust's loan officer to review the Amberwood Private Placement Memorandum that was in Ameritrust's vault. The loan officer found the Amendment to the Private Placement Memorandum, which sets out the option to put, on the first inside page of the memorandum.

On December 4, 1990, Ameritrust filed this action against White to collect on the second note. Both parties filed motions for summary judgment, and White filed a motion to add a counterclaim against Ameritrust. The counterclaim alleged that Ameritrust's actions "constitute participation in and conspiracy with Cardinal in the conversion of the Notes for the benefit of Cardinal [and] further constitute participation in and conspiracy with Cardinal in the breach of fiduciary duties owed to White and Amberwood by Cardinal under the Partnership Agreement and applicable law."[3] The district court denied the motions for summary judgment, but granted the motion to add the counterclaim.

Prior to trial, at the parties' request, the district court ruled on the negotiability of the note. The court determined that the forfeiture clause destroyed the note's negotiability: Relying

---

[3]R8-79-3.

on O.C.G.A. § 11-3-104(1)(b), which provides that a negotiable instrument must contain "an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer," the court held that the forfeiture clause vested an impermissible "other power" in Amberwood.[4]  Thus, the district court concluded that as a non-negotiable instrument, the note was not governed by Article Three of the Uniform Commercial Code, but rather by Georgia's common law relating to the assignment of a contractual right to pay.  Consequently, Ameritrust took the note subject to any defenses that White could assert against the assignors of the note.

The case proceeded to a bench trial on October 25, 1993. After the trial, the district court issued a written order granting judgment for White on Ameritrust's suit on the unpaid note, and judgment for Ameritrust on White's counterclaim.[5]  The court found that all the documents executed by White and Cardinal on June 30, 1986, constituted one integrated contract.  Thus, the court rejected Ameritrust's argument that the put option agreement could not vary the terms of the unpaid note.  Ameritrust had contended that under the modification clause contained in the note, any changes would have to be attached to the note to be effective.  The court found that the put option agreement was part of the entire contract and, therefore, that it was "attached."  The district court further found that under the contract, White had a "contingent obligation" to pay the 1988, 1989, 1990, and 1991

[4]*Ameritrust v. White,* 1:90-cv-2691 (N.D.Ga. Oct. 20, 1993).

[5]*Ameritrust v. White,* 848 F.Supp. 1001 (N.D.Ga.1994).

installments, "if, and only if, [he] failed to properly exercise his option to put such payment[s] to Cardinal." The court held that White failed to exercise his option to put for 1988, but that he properly exercised this option for each of the following years; thus, he had fully performed his obligations under the contract.

As to White's counterclaim, the district court held that the evidence was insufficient to establish that Ameritrust had conspired with Cardinal. We hold the district court correctly decided this claim and affirm without further discussion.

## II. *DISCUSSION*

We agree with the district court that the note at issue in this case is not negotiable. We also agree that the documents executed at the Amberwood closing on June 30, 1986, constitute one integrated contract. We do not agree, however, that the option to put agreement relieves White of all obligations under the note. We amplify these holdings in the following discussion.

A. *Negotiability of the Promissory Note*

We turn first to an examination of the note's negotiability, as the determination on this issue is potentially dispositive. If the note is negotiable, then Ameritrust may qualify as a holder in due course, in which case White's defense, the put option, is ineffectual. On the other hand, if the note is non-negotiable, then it is governed by Georgia common law relating to the assignment of a contractual right, rather than by Article Three of the Uniform Commercial Code, in which case Ameritrust took the note subject to any defenses that White could assert against the assignors, including the put option defense.

The district court determined that the note was not a negotiable instrument and, therefore, that Ameritrust was not a holder in due course. The court predicated its decision on the forfeiture clause contained in the note, which provides:

> The undersigned agrees that, in the event any payment due pursuant to the terms of this Note be not timely made, the undersigned shall retroactively lose any interest in the Partnership from the date hereof and the Partnership shall have no obligation to account for any payments theretofore made by the undersigned, and that this remedy is in addition to other remedies afforded by the Partnership Agreement.

In reaching its decision, the court relied on O.C.G.A. § 11-3-104(1), which reads: "Any writing to be a negotiable instrument within this article must: ... (b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by this article." The court found that the forfeiture clause was an impermissible "other power" within the meaning of the statute.

Ameritrust argues that the forfeiture clause does not destroy negotiability because it is merely a provision regarding security and collateral. As to security, O.C.G.A. § 11-3-105(1)(e) states: "A promise or order otherwise unconditional is not made conditional by the fact that the instrument ... states that it is secured, whether by mortgage, reservation of title, or otherwise." As to collateral, O.C.G.A. § 11-3-112(1)(b) provides: "The negotiability of an instrument is not affected by ... [a] statement that collateral has been given for the instrument or in the case of default on the instrument the collateral may be sold." Ameritrust contends that these statutes render the note negotiable. We

disagree.

Both parties cite *Signet Bank v. Weaver,*[6] a case very similar to this one.  *Signet Bank,* like this case, was a suit on a note, and the defendant, like White, was a limited partner in a Cardinal Industries, Inc., limited partnership venture.  In addition, the forfeiture clause in the note at issue in *Signet Bank* was virtually identical to the clause at issue in this case.[7]  Like the district court in this case, the district court in *Signet Bank* found that the clause was an "other power" given by the maker, and not merely a statement of collateral.  The court noted that the partnership, "not the holder of the note, has the option of causing the defendant to retroactively lose any interest in the partnership. Collateral, in the sense of security for a debt, follows the debt. Here, there is a separation between the holder of the debt and the holder of the option to cause a forfeiture."  In this case, Ameritrust is the holder of the note.  Amberwood is the holder of

_____

[6] 4-90-CV-49 (N.D.Ga. May 13, 1991).

[7] The forfeiture clause in the promissory note at issue in *Signet Bank* read:

> The undersigned agrees that, in the event any payment due pursuant to the terms of this Note be not timely made, *at the option of the Partnership,* the undersigned shall retroactively lose any interest in the Partnership from the date hereof and *that* the Partnership shall have no obligation to account for any payments theretofore made by the undersigned, and that this remedy is in addition to other remedies afforded by the Partnership Agreement.

The italicized words are the only ones that differ from the words in the promissory note at issue in this case.  We find this difference to be insignificant.  The italicized words are surplusage, as only the partnership may invoke the forfeiture clause.

the option to cause a forfeiture and the "would be" beneficiary of any forfeiture. The district court in *Signet Bank* further stated that "although the forfeiture provisions may not explicitly make the obligor's promise to pay less certain, the practical effect of the provision may cause this result." The court then quoted from an Ohio decision involving a virtually identical promissory note:

> A situation could develop, by mistake or otherwise, wherein the partnership exercises its option before the holder declares a default. In such case, the maker might well decline to cure an overdue payment or to make future payments because of the forfeiture. This exemplifies the reason why negotiable instruments may contain no other promise, order, obligation, or power except as authorized by the statute.

We agree with the reasoning of the district court in *Signet Bank* and the district court in this case. To be negotiable, a note must be a courier without luggage; it must move unencumbered. However unlikely the scenario described in the quotation above, this potential created by the forfeiture clause destroys the note's negotiability.

Ameritrust relies upon *Citizens & Southern National Bank v. Johnson,*[8] in which the Georgia Supreme Court held that, under the former Negotiable Instruments Law ("NIL"), a forfeiture clause in a promissory note did not render the promise to pay conditional. Ameritrust points out that the present law, O.C.G.A. § 11-3-104(1), is, in part, a combination of sections 14-201 and 14-205 of the former NIL:

> O.C.G.A. § 11-3-104(1)(b): "Any writing to be a negotiable instrument within this article must: ... (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by this article."

---

[8]214 Ga. 229, 104 S.E.2d 123 (1958).

NIL 14-201:  Required a negotiable instrument to "contain an unconditional promise to pay a sum certain."

NIL 14-205:  Provided that a negotiable instrument could not contain "an order or promise to do any act in addition to the payment of the money."

In response to Ameritrust's argument, White points out that the language of O.C.G.A. § 11-3-104(1)(b)—"... no other promise, order, *obligation, or power*"—was not contained in the NIL.  He argues that the forfeiture provision is an impermissible "other power" under the current law.  White's contention is supported by the case law.  In *Geiger Finance Co. v. Graham,* [9] the Georgia Court of Appeals explicitly noted that § 11-3-104(1) "was specifically intended to be an expansion of the NIL.  The words "no other ... obligation or power given by the maker' are new.  The intent is that a negotiable instrument carries nothing but the simple promise to pay, with certain limited exceptions."[10]

We hold that the district court correctly determined that the forfeiture clause destroyed the note's negotiability and, therefore, that Ameritrust did not qualify as a holder in due course.  As such, Ameritrust took the note subject to White's put option defense and any other defenses.

B. *Integration of the Agreements*

Ameritrust argues that the district court erred in determining that all the documents executed on June 30, 1986, constituted one integrated contract.  Ameritrust contends that the note stands alone as a single, integrated contract and that the put

---

[9]123 Ga.App. 771, 182 S.E.2d 521, 524 (1971).

[10]*Id.*

option agreement cannot vary the terms of this contract. In support of its argument, Ameritrust relies on the following language in the note:

> This Note may not be changed or terminated orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought, with such agreement being effective and binding only upon attachment hereto.

Ameritrust contends that under the terms of this modification clause, the put option agreement, which was not attached to the promissory note, does not modify the terms of the note.

In support of its finding that all the documents executed on June 30, 1986, constituted one integrated contract, the district court relied on *Manry v. Hendricks,*[11] in which the court held: "A contract is not necessarily contained in a single paper, and our Code provides in § 38-502 that all contemporaneous writings shall be admissible to explain each other." Code § 38-502 is now codified at O.C.G.A. § 24-6-3(a), which provides: "All contemporaneous writings shall be admissible to explain each other." Thus, as an evidentiary matter, all documents executed on June 30, 1986, are admissible to explain the promissory note.

The district court also relied on *Wardlaw v. Woodruff,*[12] in which the court held: "Where a promissory note is given contemporaneously with a written agreement between the same parties which states the consideration of the note, the two instruments constitute one contract and are to be construed together." While the put option agreement does not state the consideration of the

---

[11]66 Ga.App. 442, 18 S.E.2d 97, 104 (1941).

[12]175 Ga. 515, 165 S.E. 557, 560 (1932).

promissory note, the subscription agreement does. The promissory note, the subscription agreement, and the partnership agreement cross-reference each other. All of the documents signed on June 30, 1986, were signed contemporaneously and appear as parts of a whole.

Ameritrust relies on *Irvindale Farms, Inc. v. W.O. Pierce Dairy, Inc.*[13] In *Irvindale,* the court, relying on *Wardlaw,* held that the seller's fulfillment of a provision in a sales contract was a condition precedent to the seller's right to recover on a series of notes executed by the buyer. In so holding, the court reasoned: "The contract referred to and described the notes and stated the terms and provisions of the sale, and the notes referred to the contract and stated that they were given subject to its terms. In these circumstances, the notes and contract are to be construed together as constituting one contract."[14] Ameritrust argues that the note at issue in this case does not refer to the put option agreement; thus, the two cannot be construed together as one contract. Contrary to Ameritrust's assertion, the court in *Irvindale* did *not* go so far as to hold that a note must refer to a contract for the two to be construed together. While a note's reference to a contract certainly supports such a construction, *Irvindale* does not hold that the reference is necessary to such a construction.

Ameritrust also relies on *Kiser v. Godwin,*[15] in which the court

---

[13]78 Ga.App. 670, 51 S.E.2d 712 (1949).

[14]*Id.* 51 S.E.2d at 721.

[15]90 Ga.App. 825, 84 S.E.2d 474 (1954).

declined to enforce a letter agreement pursuant to which the buyer agreed to pay more than specified in the contemporaneous sales contract. In concluding that the letter agreement was not a part of the sales contract, the court relied on an express merger clause in the sales contract:

> The merger clause in the contract of sale answers these contentions. The parties provided against the use of any evidence, other than the writing itself, as to their intent in the transaction. The paper itself, together with any modification attached and signed by both parties, is to be the "sole and entire agreement." It is also provided that only the promises, representations, or inducements made in the writing shall be binding upon the parties.[16]

The court distinguished *Manry,* noting that the contract at issue in *Manry* did not have an express merger clause.

This case is distinguishable from *Kiser* in that the note at issue here does not contain an express merger clause like that in *Kiser.* Ameritrust relies on the modification clause; while this clause provides that any modification must be attached to the note, it says *nothing* about the note being the sole and entire agreement. Thus, *Kiser* does not support Ameritrust's position.

Finally, Ameritrust relies on a line of cases that, like *Craig v. Citizens & Southern National Bank,*[17] stand for the proposition that the maker of a note "will not be allowed to prove that his obligation to pay was dependent or conditional upon the promisee's compliance with a prior or contemporaneous agreement not expressed in the note, unless the execution of the note was induced by fraud, accident, or mistake." *Craig* and the cases cited are not apropos

---

[16]*Id.* 84 S.E.2d at 475.

[17]142 Ga.App. 474, 236 S.E.2d 166, 167 (1977).

to any issue in this case. *Craig* and those cases merely stand for the proposition that "where parties have reduced to writing what appears to be a complete and certain agreement, it will in the absence of fraud, accident, or mistake be conclusively presumed that the writing contains the entire contract."[18] This is merely a statement of the "parole evidence" rule which is not involved here.

After careful consideration, we hold that the district court's conclusion that all of the documents executed on June 30, 1986, constitute one contract is supported by the law and the facts of this case. Thus, it is irrelevant that the put option agreement was not attached to the promissory note in accordance with the modification clause.

C. *Construction of the Put Option*

Ameritrust argues that the district court erred in concluding that White had only a "contingent obligation" to pay the installments on the note. Ameritrust points out that, under the put option agreement, Cardinal granted to White the option to put his obligations under the note to Cardinal. Ameritrust argues that the put option agreement did *not* release White from his obligations to Amberwood to make payments on the note; rather, the put option agreement only gave White a contractual right against Cardinal to require Cardinal to assume White's obligations under the note. Thus, Ameritrust argues, White is still obligated under the note to make payments to Amberwood or its assignee, although White may have a contractual right to collect these payments from Cardinal under

---

[18]*Id.*

the put option agreement.

In support of its position, Ameritrust relies on the same *Signet Bank v. Weaver* case discussed in Part A above.[19] *Signet Bank* involved a put option clause identical to that at issue in this case. The district court in *Signet Bank* concluded that this put option did *not* release the defendant from liability on the note; the court reasoned:

> Defendant contends that by exercising its rights under this provision he is released from his obligation to pay Palmside [the limited partnership] the specified payment for the year in question. Defendant's support for this position, however, is tenuous. Defendant argues nothing more than that the plain language of the provision abrogates Defendant's liability on the note upon exercise of the "put" option, and that there would be no logical reason for the provision were it held to not have this effect.
>
> As this Court reads the provision, however, all Defendant gains by exercise of his right to "put" payment obligations to Cardinal Industries Inc. is Cardinal Industries Inc.'s promise to purchase the attendant Limited Partnership interest. The provision does not abrogate any continuing liability to Palmside. "Palmside" is not mentioned in the provision. Under this provision Defendant's exercise of its right to "put" does not release it from liability but simply perfects for Defendant a breach of contract remedy for Cardinal Industries Inc.'s failure to perform its contractual obligation. This Court is unable to read into a contract things which simply are not there.[20]

We agree with this reasoning. Under the terms of the promissory note at issue in this case, White is obligated to pay Amberwood or its assignee $446,530. The put option clause does not mention Amberwood, and Amberwood is not a signatory on the put

---

[19]*See* text accompanying notes 7 and 8. Like the district court in this case, the district court in *Signet Bank* set out its holding on negotiability of the note and on construction of the put option agreement in two separate opinions. The holding on construction of the put option agreement is set out in the following opinion: 4:90-CV-49-HLM (N.D.Ga. Sept. 18, 1991).

[20]*Id.*

option agreement; the agreement is signed only by Cardinal and Cardinal Industries Development Corporation. While the put option clause gives White "the option to put to Cardinal" certain obligations under the notes, it does *not* abrogate White's liability to Amberwood, or its assignee, under the notes. Accordingly, we hold that the district court erred in concluding that the put option agreement relieved White of liability on the promissory note.

Our construction of the option to put is consistent with the Amberwood Certificates on file with the Clerks of the Superior Courts of Bartow and Fulton Counties. In the counties' files are the Certificate of Limited Partnership, filed in August 1985, and the Certificate of Amendment of Limited Partnership Agreement, filed in July 1986. This latter document indicates that White is the sole limited partner and that his total contribution to the partnership will be $896,980; it does *not* mention the option to put. Under O.C.G.A. § 14-9A-25(b), a certificate of limited partnership must be amended whenever "[t]here is a change in ... the amount or character of the contribution of any limited partner." If, as White contends, his exercise of option to put relieved him of his obligation to contribute $446,530 to Amberwood under the terms of the second promissory note, this would certainly constitute a "change in ... the amount or character" of his contribution within the meaning of O.C.G.A. § 14-9A-25(b). Yet, such a "change" is not reflected in the documents in the counties' files. What is reflected in these documents—that White is obligated to contribute $896,980 to Amberwood—is consistent with

our conclusion that White's exercise of the option to put did not relieve him of liability under the promissory note.

Although the put option agreement does not relieve White of his obligation to make payments on the promissory note, it does, by its terms, give White a contractual right to collect these payments from Cardinal. White cannot rely on this contractual right against Cardinal to set off his obligations under the note because Cardinal was not a party to the note transaction; that is, Cardinal is neither the original obligor nor an assignee. White made the note payable to Amberwood, Amberwood endorsed the note to the CISC, and CISC endorsed the note to Ameritrust. Cardinal was not in this chain of assignment. Thus, White's contractual right against Cardinal is no defense to Ameritrust's cause of action against White.

Moreover, even if Cardinal were a party to the note transaction through some inter-corporate relationship with CISC, White's contractual right against Cardinal under the put option agreement is unenforceable due to application of the Georgia Uniform Limited Partnership Act. O.C.G.A. § 14-9A-47 provides:

14-9A-47. Withdrawal or reduction of contribution.

(a) A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until:

(1) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them; [and]

.    .    .    .    .

(3) The certificate required under Code Section 14-9A-20 is canceled or so amended as to set forth the withdrawal

or reduction.

The Georgia courts have construed this statute only once, in the case of *Mills v. Kochis.* [21] *Kochis,* like this case, involved a limited partnership that owned an apartment complex. The articles of partnership contained a repurchase commitment by the general partners to the limited partners in the event of foreclosure on the property. After the property was foreclosed, the limited partners brought suit against the general partners to recover on the repurchase commitment. The Georgia Supreme Court upheld a ruling in favor of the general partners, finding that "the repurchase provision found in the partnership agreement [is] in violation of [O.C.G.A. § 14-9A-47] and [is] not enforceable absent a showing that obligations to third party creditors have been satisfied."[22]

We find that White's contractual right against Cardinal under the put option agreement, like the repurchase commitment at issue in *Kochis,* is unenforceable under O.C.G.A. § 14-9A-47 absent a showing that all obligations to Amberwood's third party creditors have been satisfied. Under the two promissory notes, White was obligated to contribute $896,980 to Amberwood. White's contractual right against Cardinal under the put option agreement amounts to a right to receive from Cardinal, the general partner, a part of this contribution. Thus, O.C.G.A. § 14-9A-47 is applicable to render White's contractual right unenforceable absent satisfaction of Amberwood's debts.

---

[21]132 Ga.App. 492, 208 S.E.2d 352 (1974), *aff'd,* 233 Ga. 652, 212 S.E.2d 823 (1975).

[22]212 S.E.2d at 825.

Accordingly, we conclude that the district court erred in holding that White's exercise of this option to put relieved him of his liability under the note. For the reasons explained above, we hold that White may not rely on the put option agreement as a defense against Ameritrust's cause of action on the note.

D. *Propriety of the Assignments*

White argues that, even if this court holds that the option to put is not a valid defense to payment of the promissory note, he is not obligated on the note because the assignment of the note was improper. Specifically, he contends that:

> He executed the promissory notes in favor of Amberwood as part of the purchase price of his limited partnership interest. Cardinal Industries, Amberwood's general partner, took the notes and assigned them to Ameritrust as collateral for the general corporate borrowings of the Cardinal entity, in order to fund Cardinal's corporate cash needs. In doing so, the general partner converted the notes and acted in violation of its fiduciary duties and in violation of the Partnership Agreement, which prohibited the general partner from assigning Mr. White's notes as collateral for a loan, except for a loan "to be obtained by the partnership," "to be made to the partnership," or "on behalf of the partnership." The loan that Cardinal obtained from Ameritrust using the Amberwood notes as collateral did not meet any of these three standards, and Amberwood received nothing in exchange for assignment. There was thus a failure of consideration as to Mr. White's notes, in that Cardinal and Amberwood materially failed to perform, and Mr. White was excused from performance to Amberwood. Mr. White's defense to payment as against Amberwood operates as a defense against Amberwood's assignee, Ameritrust.[23]

White presented to the district court both evidence and argument to support this defense. The district court did not address the merits of this defense. Rather, the district court assumed, without deciding, that the note was properly assigned, finding a decision on the propriety of the assignment unnecessary given its

---

[23]White's Appellate Brief of August 9, 1994, at 35-36.

construction of the put option agreement.

We now find a decision on the propriety of the assignment of the note necessary. Because we affirm the district court's decision as to the non-negotiability of the note, Ameritrust took the note subject to any defenses White could assert against Amberwood. White's allegation that Amberwood and Cardinal violated the Partnership Agreement by assigning the note to Ameritrust is a potentially viable defense as against Amberwood and, therefore, as against Ameritrust. The district court understandably did not rule on this potentially viable defense, as it held that the put option agreement relieved White of liability to Ameritrust. Because we reverse the district court's holding as to the put option agreement, we must now ask the district court to rule on White's alternative defense, the alleged impropriety of the assignment of the note.

Ameritrust contends that a remand to the district court for a decision on the propriety of the assignment is unnecessary. First, Ameritrust argues that "the chain of title issue was decided in *In re Cardinal Industries, Inc.,* Civil Action No. 2-90-62087, slip op. (Bkr.S.D.Oh. June 7, 1990),"[24] a bankruptcy court decision in the Cardinal bankruptcy proceedings. Ameritrust repeatedly refers to this unpublished decision as Plaintiff's Exhibit 23. The decision is *not* Plaintiff's Exhibit 23, and we have been unable to locate a copy of the decision in the extensive record in this case. In any event, Ameritrust concedes that the decision is merely an order granting Ameritrust relief from the automatic stay, and we fail to

---

[24]Ameritrust's Appellate Brief of Sept. 19, 1994, at 45.

see how such an order resolves the propriety of the assignment of the note. Second, Ameritrust contends that White has failed to deny the propriety of the assignment of the note. This contention is belied by the record before us. Accordingly, we find it necessary to remand this case for the district court to decide whether the assignment of the promissory note was proper.

## III. *CONCLUSION*

For the reasons explained above, we REVERSE the district court's entry of judgment for White on Ameritrust's suit on the note, AFFIRM the district court's entry of judgment for Ameritrust on White's counterclaim, and REMAND the case for further proceedings consistent with this opinion.